PEOPLE v CARPENTIER

Docket No. 97268. Argued April 6, 1994 (Calendar No. 10). Decided
    August 2, 1994. Rehearing denied 447 Mich 1202.

    Louis E. Carpentier, Jr., in 1983, was convicted by a jury in the
        Genesee Circuit Court, Robert M. Ransom, J., of armed robbery
        and was sentenced to twenty-five to fifty years imprisonment.
        The Court of Appeals, MacKENZIE, P.J., and HOOD and J. MIES,
        JJ., remanded the case in an unpublished opinion per curiam
        for an articulation of the reason for imposing the sentence.
        After remand, the Court affirmed the sentence, holding that it
        was justified under *People v Coles,* 417 Mich 523 (1983) (Docket
        No. 73945). The Michigan Supreme Court denied leave to
        appeal in an unpublished order (Docket No. 77731). In 1992, the
        defendant again challenged the length of his sentence, moving
        for relief from judgment under MCR 6.508, and alleging that
        prior juvenile adjudications that had been considered by the
        trial court in determining his sentence were constitutionally
        infirm because he was not represented by counsel and did not
        waive his right to representation. By that time, the transcripts
        of his juvenile proceedings had been destroyed pursuant to
        administrative policy. The circuit court, Robert M. Ransom, J.,
        denied the defendant's motion, finding that he had failed to
        establish "good cause" as required by MCR 6.508(D)(3). The
        Court of Appeals, CORRIGAN, P.J., and WAHLS and GRIBBS, JJ.,
        vacated the opinion of the circuit court in an unpublished
        order, concluding that the Sixth Amendment claim, if estab-
        lished, represented a jurisdictional defect, and thus the good-
        cause requirement of the court rule, by its own terms, was not
        applicable, and remanded the case to the trial court for consid-

REFERENCES

Am Jur 2d, Criminal Law §§ 527, 599; Juvenile Courts and Delin-
    quent and Dependent Children, §§ 56, 59.

Court's right, in imposing sentence, to hear evidence of, or to
    consider, other offenses committed by defendant. 96 ALR2d 768.

Consideration of accused's juvenile court record in sentencing for
    offense committed as adult. 64 ALR3d 1291.

Expungement of juvenile court records. 71 ALR3d 753.

Admissibility of evidence of other offense where record has been
    expunged or erased. 82 ALR4th 913.

eration of the defendant's collateral challenge (Docket No. 161218). The people appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice CAVANAGH, and Justices LEVIN and MALLETT, the Supreme Court *held:*

Where a defendant collaterally challenges prior juvenile adjudications used for purposes of recidivist sentencing, and the relevant juvenile records have been properly expunged, a defendant must bear the initial burden of establishing by prima facie proof that the adjudications were procured without counsel or without the proper waiver of counsel or that a request for such proof was refused by the sentencing court or the court failed to reply to the request.

1. Where a defendant seeks postappeal relief, properly alleging a jurisdictional defect in a prior proceeding that resulted in conviction and sentence, the "good cause" and "actual prejudice" prerequisites of MCR 6.508(D)(3) need not be satisfied. The rule permits jurisdictionally based challenges to be raised after a criminal appeal has been exhausted. An alleged violation of the right to counsel constitutes a jurisdictional defect that may be collaterally challenged by a convicted criminal defendant. Because in this case the defendant's collateral challenge raises a jurisdictional defect not subject to the good-cause or actual prejudice demands of the rule, the trial court erred in dismissing the challenge for lack of good cause. However, remand is not required because the defendant is incapable of proving that his prior convictions were constitutionally infirm.

2. A defendant who collaterally challenges an antecedent conviction allegedly procured in violation of the right to counsel bears the initial burden of establishing that the conviction was obtained without counsel or a proper waiver of counsel by presenting prima facie proof that a previous conviction was violative of this right or by presenting evidence that records pertaining to the conviction were requested from the sentencing court and that the court either failed to reply or refused to furnish copies of the records within a reasonable time. *People v Moore,* 391 Mich 426 (1974). In this case, the defendant requested copies of his juvenile records. Because the probate court sent a letter explaining that the defendant's records had been properly expunged, it did not fail to reply. Nor did it refuse to furnish copies of the records because it could not refuse to furnish what it did not possess. Thus, the defendant has not met his burden of proving that the sentencing court either failed to reply or refused to furnish the records. Nor has

he presented prima facie proof that his prior conviction was violative of his right to counsel.

3. The state has a legitimate interest in promoting the finality of judgments. For purposes of presumptions and burden, there is an important distinction between direct review and collateral attack. While presuming invalidity from a silent or unavailable record may be appropriate on direct review, such a presumption is less compelling in a collateral challenge where the countervailing presumption of regularity is entitled to greater deference for its importance in assuring the finality of judgments and conserving scarce judicial resources. Because collateral attacks threaten the finality of judgments, it is appropriate to impose the burden of proof on the party making the challenge, in this case, the defendant.

Justice RILEY, joined by Justices BOYLE and GRIFFIN, concurring, stated that where a defendant asserts a collateral challenge of prior convictions used in determining a sentence, alleging that the convictions were constitutionally infirm because of the lack or waiver of counsel, MCR 6.508(D)(3) bars the challenge unless the defendant shows that good cause exists for the delay in bringing the motion or that there is a significant probability that the defendant is innocent, and that actual prejudice occurred because of the alleged error. The good-cause and prejudice requirements are waived when a collateral challenge alleges that prior convictions were invalid because of a jurisdictional defect.

MCR 6.508(D) permits a convicted defendant to challenge a conviction or sentence even after an unsuccessful appeal of right. The circumstances under which a defendant thereafter may appeal are narrowly limited to jurisdictional defects, challenges not raised because of good cause and that constitute actual prejudice, or situations in which there is a significant probability that the defendant is innocent and there is actual prejudice. In this case, there appears to be no good cause for the nearly decade-long delay in the defendant's collateral attack. No cogent reason was expressed for the delay, nor did the defendant allege that there is a significant possibility that he is innocent of the crime. Thus, the good-cause requirement was not met, and MCR 6.508 precludes the challenge unless the good-cause and prejudice requirements may be waived.

Jurisdictional defects do not include a review of the merits of the case or evidentiary or procedural errors, but only those challenges that question the very authority of the court to convict and sentence the defendant. Hence, even fundamental errors of criminal procedure may be insufficient to challenge

jurisdiction because they do not challenge the authority of the state to prosecute. In this case, whether the alleged improprieties are jurisdictional defects under Michigan law is dubious. Yet, the United .States Supreme Court in *Custis v United States*, 511 US —; 114 S Ct 1732; 128 L Ed 2d 517 (1994), has held that, as a matter of federal law, a defendant who alleges that a prior conviction used to enhance a sentence occurred in violation of the Sixth Amendment right to counsel may collaterally attack the conviction. Thus, the Court of Appeals correctly ruled that the defendant's challenge may be heard under MCR 6.508(D).

In this case, remand is not required because, as a matter of law, the defendant is incapable of proving that his prior convictions were constitutionally infirm. Once the prosecution has provided a certified copy of a prior conviction or an equivalent proffer, the burden of proof shifts to the defendant to establish that the earlier conviction was constitutionally infirm. The placing of the burden is permitted under the federal constitution and furthers the finality of judgments, judicial economy, and the orderly administration of justice. Further, the state met its initial burden. The defendant failed to present any evidence that he was denied counsel. Without more, the presumption of regularity attaches and preserves the validity of the adjudications. Thus, the defendant's request for relief should be denied.

Affirmed in part and reversed in part.

*People v Triplett (After Remand),* 91 Mich App 82; 283 NW2d 658 (1979) overruled.

*People v Schram,* 98 Mich App 292; 296 NW2d 840 (1980) overruled.

*People v Evans,* 115 Mich App 711; 321 NW2d 686 (1982) overruled.

CRIMINAL LAW — PRIOR JUVENILE CONVICTIONS — RIGHT TO COUNSEL — COLLATERAL CHALLENGES — BURDEN OF PROOF.

Where a defendant collaterally challenges prior juvenile adjudications used for purposes of recidivist sentencing, and the relevant juvenile records have been properly expunged, a defendant must bear the initial burden of establishing by prima facie proof that the adjudications were procured without counsel or without the proper waiver of counsel or that a request for such proof was refused by the sentencing court or the court failed to reply to the request.

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, *Arthur A. Busch,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Research, Training, and Appeals, and *Gladys Christopherson,* Assistant Prosecuting Attorney, for the people.

*Earl R. Spuhler* and *Kenneth M. Malkin* for the defendant.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training, and Appeals, for Wayne County Prosecutor's Office.

*Kenneth M. Malkin* for Criminal Defense Attorneys of Michigan.

BRICKLEY, J. This case asks us to determine, in the context of a collateral challenge of juvenile adjudications used for purposes of subsequent recidivist sentencing and where the relevant juvenile records have been expunged, which party bears the initial burden of proving that the underlying convictions were procured without counsel or a proper waiver of counsel. Because we conclude that the alleged error is a jurisdictional defect not subject to the prerequisites of MCR 6.508(D)(3), judicial review of defendant's collateral challenge is appropriate and the circuit court decision dismissing for lack of "good cause" is reversed. Similarly, while we affirm the reasoning of the Court of Appeals we do not remand because, applying the mandates of *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), defendant has failed to meet his initial burden of proof that a constitutional violation occurred.

Specifically, we hold that *Moore,* when properly interpreted and extended to the facts of this case, prohibits the extraordinary relief sought by defendant. Because defendant presented neither (1) prima facie proof that his prior juvenile adjudications were procured in violation of *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), nor (2) evidence that his request for such proof was refused by the sentencing court, or that the sentencing court failed to reply to his request, he has failed to satisfy his initial burden of showing that the circuit court erred by relying on prior juvenile adjudications in which he was allegedly not represented by counsel for purposes of sentencing.

I

In 1982, defendant Louis E. Carpentier, Jr., armed with a revolver, robbed a bank of over $5,000 during business hours. In 1983, a jury convicted him of armed robbery,[1] and the court sentenced him to twenty-five to fifty years imprisonment.

Defendant appealed the length of his sentence as excessive under *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), rev'd *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), and the Court of Appeals remanded the case for an articulation of the reasons for the sentence. After remand, the Court affirmed the sentence, holding it justified under *Coles.*[2]

---

[1] MCL 750.529; MSA 28.797.

[2] Unpublished opinion per curiam of the Court of Appeals, decided November 21, 1985 (Docket No. 73945). The Court reasoned:

The judge noted that the offense committed was a serious one, punishable by up to life imprisonment. The robbery took place at a bank during business hours, and defendant was

This Court denied leave to appeal.[3]

In November 1992, defendant again challenged the length of his sentence by filing for relief from judgment under MCR 6.508. Defendant alleged that he should be resentenced because the trial court considered juvenile adjudications that were constitutionally infirm to determine his sentence, in that he was not represented by counsel and did not waive the right to representation at the juvenile adjudications. At the sentencing hearing, defendant was twenty-one years old, and his prior contacts with the juvenile system were noted on the presentence hearing report.[4] The defendant

---

armed with a gun. Thus, several persons could have been seriously injured. The judge further noted that defendant, aged 20 at the time of the present offense, is a severe drug addict. He has a juvenile record which resulted in either probation or commitment for being a runaway, larceny in a building, breaking and entering a dwelling, unauthorized driving away of an automobile, and larceny from a person. As an adult, a negotiated plea of guilty to attempted larceny in a building resulted in a one-year sentence. Defendant showed no remorse regarding the instant offense. Defendant was discharged from the Army 13 months after he enlisted because of his inability to adapt to military life. According to defendant's presentence report, he had been unable to sustain any consistent employment and lacks competitive job skills.

[3] Unpublished order of the Supreme Court, entered June 3, 1986 (Docket No. 77731).

[4] The presentence report listed defendant's juvenile history:

02-15-78   Petition filed, Runaway.
02-15-78   Petition filed for Larceny in a Building. This offense involves Louis stealing a pocket warmer from Woolco.
02-16-78   Transferred to the Juvenile Home and it was noted that his mother refused to pick him up after being contacted by authorities.
02-17-78   Psychological examination administered by psychologist Carl Poit. The report pointed out Mr. Carpentier's chaotic home situation and indicated he would not abide by the house rules. It was also mentioned that Mr. Carpentier liked to be a very independent individual despite being unable to adequately care for himself. He was administered the Weschler Intelligence

verified the accuracy of his juvenile history, and he did not object to the use of those adjudications. While the transcripts of those proceedings existed at the time of his sentencing and during his initial appeal, they were physically destroyed pursuant to administrative policy before the filing of defendant's MCR 6.508 motion.

Finding that defendant had failed to establish "good cause" as required by MCR 6.508(D)(3), the trial court denied his motion. The Court of Appeals, however, concluded that defendant's Sixth Amendment claim "represents, if established, a jurisdictional defect . . . and thus the 'good cause' requirement of MCR 6.508(D)(3)(a) is not, by its own terms, applicable." Accordingly, the Court of Appeals ordered the case remanded to the trial court for consideration of defendant's collateral challenge.

This Court granted leave to appeal on February 3, 1994. 444 Mich 949.

---

Test with a full scale I.Q. of 88, his verbal I.Q. 87 and his performance 91. It was pointed out that Mr. Carpentier was functioning in both Math and English at the 7.7 level.

05-31-78 Breaking and Entering, Runaway. This offense involves Louis breaking into a home located at 1233 N. Saginaw Street, Flint, Michigan.

06-19-78 Six months probation and was made a Temporary Ward of the Court.

07-13-78 Petition filed for Runaway, UDAA and Larceny from a Person.

07-27-78 Committed to the Department of Social Services.

08-06-78 Transferred to the Park Place Halfway House in Kalamazoo, Michigan.

11-31-78 Transferred from Park Place to his mother's home.

01-23-80 Youth parole review board felt that Louis had not responded to the services that he had been exposed to and recommended discharge.

02-01-80 Discharged from juvenile probation.

II

Defendant's collateral challenge is brought pursuant to MCR 6.508(D)(3), which provides, in pertinent part:

> The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> * * *
>
> (3) alleges grounds for relief, *other than jurisdictional defects,* which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in a prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief. [Emphasis added.]

It is clear that, by its own terms, the "good cause" and "actual prejudice" prerequisites of MCR 6.508(D)(3) need not be satisfied where a defendant properly alleges a jurisdictional defect in a prior proceeding that resulted in conviction and sentence. It is also apparent that MCR 6.508— which articulates the procedures for obtaining *postappeal* relief—permits jurisdictionally based challenges to be raised *after* a criminal appeal has been exhausted. Certainly, if a criminal defendant may obtain postconviction review by establishing "good cause" and "actual prejudice" under MCR 6.508(D)(3), that defendant may alternately procure review by properly alleging the jurisdictional defect contemplated and exempted from the requirements of this rule. See also *People v Johnson,* 396 Mich 424, 442; 240 NW2d 729 (1976) ("Defendant may always challenge whether the state had a right to bring the prosecution in the first place").

In this case, the Court of Appeals specifically found that defendant's allegation of a *Gideon* violation at prior juvenile proceedings established a jurisdictional defect and, accordingly, remanded to the circuit court for consideration of defendant's claim. The Court of Appeals reasoning has recently been affirmed by the United States Supreme Court in *Custis v United States,* 511 US —; 114 S Ct 1732; 128 L Ed 2d 517 (1994). In *Custis,* the Court held that, as a matter of federal law, a criminal defendant possesses the constitutional right to collaterally challenge a prior conviction that is used to enhance a sentence when that defendant alleges that the prior conviction was procured in violation of the Sixth Amendment right to counsel. Reviewing its history of permitting habeas corpus collateral challenges based on alleged right to counsel violations, the Court explained that it had long "attributed a jurisdictional significance to the failure to appoint counsel," and reiterated that this alleged Sixth Amendment violation constituted such a jurisdictional defect:

"If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a *jurisdictional* bar to a valid conviction and sentence depriving him of his life or his liberty[.] . . . The judgment of conviction pronounced by a court *without jurisdiction* is void, and one imprisoned thereunder may obtain release by habeas corpus." [*Id.,* 114 S Ct 1737 (emphasis added) (quoting *Johnson v Zerbst,* 304 US 458, 468; 58 S Ct 1019; 82 L Ed 1461 (1938).]

Notably, while affording "jurisprudential signifi-

cance" to alleged *Gideon* claims, the Court expressly limited the availability of collateral challenges to these particular Sixth Amendment violations and refused to extend the opportunity for relief to other alleged constitutional infirmities. *Custis,* 114 S Ct 1734 ("We hold that a defendant has no such right [with the sole exception of convictions obtained in violation of the right to counsel] to collaterally attack prior convictions"). This limitation was based, in part, on the "historical basis in [United States Supreme Court] jurisprudence of collateral attacks for treating the right to have counsel appointed as unique . . . ." *Id.,* 114 S Ct 1737-1738. The Court further emphasized that such a limitation was compelled by the ease of administration that accompanied such exceptional claims, and by the federal court's interest in promoting the finality of judgments for other non-*Gideon* challenges. *Id.,* 114 S Ct 1739.

We find the reasoning of *Custis* both persuasive and consistent with Michigan common law. Like the federal courts, both the Michigan judiciary singularly, and the citizenry whose collective rights and protections it is obligated to protect, have a compelling interest in championing the finality of criminal judgments. However, and again like the federal courts, Michigan has recognized the unique import of a defendant's constitutional right to counsel. See, e.g., *People v Ingram,* 439 Mich 288; 484 NW2d 241 (1992); *People v Crawford,* 417 Mich 607, 614; 339 NW2d 630 (1983) (BRICKLEY, J., concurring). The exceptional nature of this constitutional protection counsels for similarly atypical protection. For this reason, we align ourselves with the rationale and result of *Custis* and hold that an alleged *Gideon* violation consti-

tutes a jurisdictional defect that may be collater-
ally challenged by a convicted criminal defendant.[5]

Because defendant's collateral challenge raises a
jurisdictional defect not subject to the "good
cause" or "actual prejudice" demands of MCR
6.508(D)(3), the circuit court erred in dismissing
defendant's claim for lack of good cause. Relatedly,
the Court of Appeals reasoning that defendant's
claim constituted a jurisdictional defect is affirmed
as accurate.

III

Unlike the Court of Appeals, however, we do not
remand this action because, on the basis of the
well-established procedure set out in *Moore* for
reviewing collateral challenges alleging *Gideon*
violations, defendant is incapable of proving that
his prior convictions were constitutionally infirm.

---

[5] We note, of course, that whereas the defendant in *Custis* raised a
Sixth Amendment collateral challenge during direct review of his
enhanced criminal sentence, the defendant here has raised his similar
challenge some ten years after the recidivist sentence enhanced by
juvenile convictions. In this regard, it may be argued that the rule of
*Custis* is specifically directed to those situations in which a defendant
collaterally challenges prior convictions on direct review of a subse-
quent criminal proceeding and, accordingly, that our reliance on this
Supreme Court decision is inapposite.

We reject both the distinction and the conclusion. The *Custis*
decision expressly holds that convictions obtained in violation of
*Gideon* constitute jurisdictional defects. As contemplated by MCR
6.508(D)(3), jurisdictional defects—and any alleged error for which a
defendant can show "good cause" and "actual prejudice"—may be
challenged postappeal, i.e., *after* direct review has been exhausted.
Accordingly, while *Custis* may proceed upon a factual foundation of
direct review, we believe that, for purposes of Michigan law, the
structure of its reasoning extends beyond this limited scenario to
include jurisdictional defects raised *after* direct review. Therefore, the
only thing inapposite about *Custis* is the timing of the collateral
challenges that it contemplates. Such jurisdictional challenges may be
raised on direct review or, as contemplated by MCR 6.508(D)(3), in a
postappeal motion for relief from judgment.

A

Twenty years ago, this Court held that a defendant who collaterally challenges an antecedent conviction allegedly procured in violation of *Gideon, supra,* bears the initial burden of establishing that the conviction was obtained without counsel or without a proper waiver of counsel. *Moore, supra.* In *Moore,* we explained that a defendant could satisfy this initial burden by either of two approaches:

1) by presenting "prima facie proof that a previous conviction was violative of *Gideon,* such as a docket entry showing the absence of counsel or a transcript evidencing the same," or

2) by presenting evidence that the defendant requested such records from the sentencing court and that the court either (a) failed to reply to the request, or (b) refused to furnish copies of the records, within a reasonable time. *Id.* at 440-441.

Once either approach was satisfied, we held that a defendant would have met his initial burden of proof and a *Tucker*[6] hearing would be convened at which "the burden [would] then be upon the prosecutor to establish the constitutional validity of the prior conviction." *Id.* at 441.

Today we reaffirm that *Moore* articulates the proper procedures to be followed where a defendant collaterally challenges a prior conviction for lack of counsel or a proper waiver of counsel. In so

[6] *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). In *Tucker,* the United States Supreme Court held that prior convictions invalid under *Gideon,* could not be considered at a subsequent criminal sentencing. "*Tucker* is applicable with full retroactivity to all sentences imposed by Michigan courts." *Moore, supra* at 437.

affirming, however, we note that in the years since *Moore,* various interpretations of its prerequisites for *Tucker* relief have evolved to erode its fundamental premise that collateral challenges implicate extraordinary remedies and, accordingly, that the initial burden of proof must in fact rest with a defendant.[7] Because we believe that our decision in *Moore* has been frequently misunderstood and misapplied by the lower courts, we now take this opportunity to review and reaffirm its mandates.

B

Our *Moore* decision is straightforward: to prevail upon a request for *Tucker* relief, defendant must present prima facie proof that a prior conviction violated *Gideon,* or present evidence that the sentencing court either "failed to reply" to a request for or "refused to furnish" requested copies of records and documents. Putting aside the first approach for a moment, it must be acknowledged that this Court was very specific in defining the second: a sentencing court must "fail[ ] to *reply*,"

---

[7] The most notable development first emerged in *People v Triplett (After Remand),* 91 Mich App 82, 87; 283 NW2d 658 (1979), rev'd 407 Mich 510; 287 NW2d 165 (1980), in which the Court of Appeals dropped our requirement that a sentencing court either "fail[ ] to reply" or "refuse[ ] to furnish" requested records, and inserted language that simply required proof that a defendant had "requested such records and has not received them." See also *People v Schram,* 98 Mich App 292; 296 NW2d 840 (1980) (same error); *People v Evans,* 115 Mich App 711; 321 NW2d 686 (1982) (same error). This interpretation has recently remanifested itself in *People v Hannan (After Remand),* 200 Mich App 123; 504 NW2d 189 (1993).

In *Hannan,* the defendant filed an affidavit stating that his request for transcripts of a prior adjudication was unfulfilled because the court reporter had been unable to locate any documentary materials pertaining to the prior conviction. Notably, the court reporter *had* replied to the defendant and informed the latter of the record's unavailability. Nevertheless, the Court of Appeals concluded that the defendant's affidavit presented a prima facie case that his pleas were obtained in violation of the right to counsel, and remanded for a *Tucker* hearing.

or "*refuse*[ ] to furnish," requested evidence. Notably, the language of these prerequisites is markedly different from the interpretation articulated in *People v Triplett (After Remand),* 91 Mich App 82; 283 NW2d 658 (1979), rev'd 407 Mich 510; 287 NW2d 165 (1980), *People v Schram,* 98 Mich App 292; 296 NW2d 840 (1980), and *People v Evans,* 115 Mich App 711; 321 NW2d 686 (1982)—to wit, that a defendant must simply "have not received" requested records. Insofar as these decisions shift the focus of judicial inquiry away from the actions or inactions of a sentencing court, and instead examine whether a defendant actually receives requested records, they constitute an improper interpretation of *Moore* and, for the reasons stated herein, are overruled as overly broad interpretations of the case.

Indeed, we take this opportunity to explain that *Moore* is in part directed at those situations in which a sentencing court affirmatively and intentionally acts to deny a defendant access to requested trial records. For example, where a sentencing court ignores a proper request for records, that court has "failed to reply" within the meaning of *Moore.* Alternatively, where a court refuses to forward records in its possession or control, that court has "refused to furnish" under *Moore.* Accordingly, to interpret *Moore* as only requiring a defendant to have requested but not received trial records opens the door to collateral challenges in a variety of situations not intended by the strict and narrow rule of *Moore.*

Nowhere are the implications of this expansive interpretation more conspicuous than in the instant case. The defendant here requested copies of his juvenile record so as to ascertain whether he had been afforded counsel, or had waived counsel, at prior juvenile proceedings. Defendant received a

letter from the deputy register of the probate court explaining that his records had been properly expunged on his thirtieth birthday.[8] It is clear that, pursuant to *Moore,* the probate court did not "fail[ ] to reply" to defendant's request because a letter *was* sent detailing the unavailability of defendant's records. Similarly, it is clear that the probate court did nòt "refuse[ ] to furnish" copies of the records because one cannot refuse to furnish that which is not first possessed. After expungement, the probate court no longer possessed defendant's records. Notably, however, had we held in *Moore* that defendant's initial burden of proof was merely satisfied with a request and a failure to *receive* records, defendant undoubtedly would have met his initial burden of proof.[9]

We hold, therefore, that defendant has not met his burden of proof under *Moore* insofar as he has not established that the sentencing court either

[8] Neither appellee nor appellant has argued that the probate court's reliance upon MCR 5.925(E)(2)(b) was improper, or that a different expungement rule should have been used. Accordingly, we do not decide if MCR 5.925 or a different rule is applicable for purposes of expungement in this case. Nor do we decide whether, under MCR 5.925, properly expunged juvenile convictions can be used for purposes of recidivist sentencing.

[9] Indeed, defendant argues that *Moore* should apply where trial records are absent and insists that, under *Moore,* he has met his burden of proof in this case:

[Defendant] maintains that when he produces proof *that a record does not exist* or the conviction on its face indicates a lack of counsel, he has . . . taken affirmative steps to document his claim. *The lack of a record* or a silent record (or the court's failure to respond) raises the issue of the lack of validity or reliability of the conviction. [Defendant] asserts that burden properly shifts to the prosecution to establish the propriety of his sentence enhancement based on what now appears to be invalid convictions. [Emphasis added.]

In short, because a record does not exist, defendant alleges to have maintained his initial burden of proof under *Moore.* For the reasons stated herein, we disagree.

"failed to reply" or "refused to furnish" the records that were requested.

Further, defendant has not otherwise presented prima facie proof that his prior conviction was violative of *Gideon.* Defendant's proffered evidence in support of a *Tucker* hearing consisted of the aforementioned letter from the probate court and two affidavits from attorneys claiming knowledge of procedures utilized in the probate court. As noted above, however, this letter is simply a reply from the court indicating that defendant's records have been expunged; it says absolutely nothing about whether defendant had, or waived, counsel at his juvenile proceeding. Accordingly, it is not relevant to the *Gideon* violation alleged here. Similarly, the two affidavits only state general allegations concerning probate court procedures and do not address defendant's *Gideon* claim specifically. Accordingly, while somewhat relevant, these affidavits also do not establish prima facie proof of a right to counsel violation.

IV

It should be acknowledged that whereas *Moore* involved a scenario in which a trial record was available, in the instant case defendant's record has been expunged and is no longer obtainable either by the defendant or the prosecutor. In fact, this lack of a record is the only significant distinction between the two cases. Accordingly, our view of *Moore* admittedly constitutes an extension of its mandates to those scenarios in which a record has been properly expunged. For the reasons stated below, however, we do not believe that this factual distinction counsels against extending *Moore* in this manner.

As previously noted, this state has a legitimate

interest in promoting the finality of judgments. The United States Supreme Court recently recognized in *Parke v Raley,* 506 US —, —; 113 S Ct 517, 523; 121 L Ed 2d 391 (1992), that there is an important distinction, for purposes of presumptions and burdens, between direct review and collateral attack. In *Parke,* the Sixth Circuit Court of Appeals concluded—in the context of *Boykin*[10] rights—that assigning the burden of proof to a defendant on the basis of a "bare record of conviction," *and absent the availability of a trial record,* was constitutionally infirm. Reversing, the Su-

---

[10] *Boykin v Alabama,* 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969). *Boykin* specifically involved the waiver, by guilty plea, of three constitutional rights: (1) the right to a jury trial, (2) the right to confront one's accusers, and (3) the privilege against self-incrimination. These constitutional rights are not the basis for defendant's collateral attack here.

Defendant makes a strong argument that, because Michigan common law recognizes a difference between *Boykin* rights and the right to counsel, *Parke* is largely irrelevant. While technically accurate, we believe that defendant's conclusion concerning *Parke* is incorrect. This Court has recognized that while the failure to advise a defendant of *Boykin* rights is not a constitutional issue (but, rather, one of policy), the right to counsel does implicate constitutional concerns and, accordingly, demands a more stringent inquiry on review. *People v Ingram, supra; People v Crawford, supra* at 615 (BRICKLEY, J., concurring in the result) (*Boykin* rights "pale[ ] beside the right to counsel," and the latter right must remain subject to collateral attack). Our decision today, of course, recognizes a defendant's right to collaterally attack prior sentences procured in alleged violation of the right to counsel.

Nevertheless, we do not believe that this conclusion undermines the reasoning or rationale of *Parke.* The focus of our legal inquiry here is not on what happens after the waiver of counsel, but instead on the waiver (or lack thereof) itself. Specifically, who bears the burden of proof on the waiver issue? The fact that the right to counsel may enjoy greater importance before and after a guilty plea says nothing about who should bear the burden of proof concerning a waiver. For example, just because the right to counsel has greater importance after a guilty plea does not automatically mean that either the prosecutor or the defendant must bear the burden of subsequently proving or disproving a valid waiver. Instead it only suggests that the waiver remains subject to collateral attack—a conclusion not disputed in this opinion. In this regard, the distinction between *Boykin* rights and the right to counsel is not dispositive here and, accordingly, the reasoning of *Parke* is properly considered.

preme Court reasoned that while presuming inva-
lidity from a silent or unavailable record may be
appropriate on direct review, such a presumption
is less compelling in a collateral challenge where
the countervailing presumption of regularity is
entitled to greater deference:

> We see no tension between [assigning the bur-
> den of proof to the defendant] and *Boykin. Boykin*
> *involved direct review of a conviction* allegedly
> based upon an uninformed guilty plea. Respon-
> dent, however, never appealed his earlier convic-
> tions. They became final years ago, and he now
> seeks to revisit the question of their validity in a
> separate recidivism proceeding. *To import Boykin's*
> *presumption of invalidity into this very different*
> *context would, in our view, improperly ignore*
> *another presumption deeply rooted in our jurispru-*
> *dence: the "presumption of regularity" that at-*
> *taches to final judgments, even when the question*
> *is waiver of constitutional rights.* [*Parke,* 113 S Ct
> 523. Emphasis added.]

This presumption of regularity is well recog-
nized in Michigan law as well, see *Dow v Scully,*
376 Mich 84; 135 NW2d 360 (1965); *Fuller v Van-
wagoner,* 49 F Supp 281 (ED Mich, 1942), and its
importance for assuring the finality of judgments,
and conserving scarce judicial resources, cannot
seriously be questioned. Therefore, while the pre-
sumption of invalidity may enjoy a very obvious
and proper place in direct judicial review—simply
to insure proper sentencing in the first instance—
the presumption must be balanced against this
state's legitimate need to preserve scarce judicial
resources with some finality of judgment. Because
collateral attacks threaten such finality, it is ap-
propriate to impose the burden of proof on that
party making the challenge—in this case, the
defendant.

Furthermore, it seems incongruous to demand that courts expunge juvenile records in certain instances, and then to permit criminal defendants the advantageous use of this requirement to circumvent enhanced sentences. The absurdity of this position is underscored by the fact that expungement has been ordered *for the benefit of the defendant*. We can see little reason why defendants should be permitted to misuse a policy, otherwise designed for their benefit, to avoid appropriate criminal sanctions.

V

In summary, where a juvenile record has been properly expunged, a defendant must bear the initial burden of establishing that prior juvenile adjudications were procured without counsel or without the proper waiver of counsel. This approach recognizes that expungement is a procedure benefiting the defendant and that collateral attacks seek an extraordinary judicial remedy, and adheres to the state's well-recognized interest in insuring the finality of judgments. Properly interpreted, *Moore* provides an appropriate and workable framework within which a defendant may meet this initial burden.

For these reasons, and while the reasoning of the Court of Appeals is affirmed, we reverse its order remanding to the circuit court, and deny defendant's request for relief from judgment.

CAVANAGH, C.J., and LEVIN and MALLETT, JJ., concurred with BRICKLEY, J.

RILEY, J. (*concurring*). At issue in the instant case is the application of MCR 6.508(D)(3) to a collateral challenge of prior convictions utilized in

the sentencing process of a nearly decade-old sentence, alleging that the prior convictions were constitutionally infirm because of the lack of counsel or the waiver of counsel. MCR 6.508(D)(3) bars such a challenge unless the defendant shows that (1) good cause exists for the delay in bringing the motion or there is a significant probability that he is innocent *and* (2) he has been actually prejudiced because of the alleged error. Nevertheless, the good-cause and prejudice requirements of MCR 6.508(D)(3) are waived when a collateral challenge alleges that prior convictions were invalid because of a jurisdictional defect.

I join the majority in denying relief. While defendant had no good cause for the delay in raising the challenge, because an allegation that the right to counsel was deprived raises a jurisdictional defect, defendant is permitted to collaterally attack his prior convictions.

I write separately because the majority fails to grapple with defendant's constitutional arguments. I would hold that the procedures in *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), are not dictated by the federal or Michigan Constitution, and that defendant has failed to meet his burden of proving that his prior adjudications were constitutionally infirm.

I

A

At issue in the instant case is the challenge of a sentence imposed nearly a decade ago. There is no dispute that defendant appealed his sentence immediately following his conviction and that he is now raising a new and independent challenge to the sentence. Accordingly, defendant moves for relief under MCR 6.508(D). Defendant claims that

the trial court improperly relied on prior juvenile adjudications because he alleges that those adjudications occurred without counsel and a valid waiver of counsel. The question presented is whether the motion may be heard under MCR 6.508(D).

Defendant seeks an extraordinary remedy that permits a challenge to his sentence although he was previously granted the opportunity to attack its validity at all stages of the criminal justice process. In the trial court, defendant was permitted to challenge the accuracy of his presentence report, MCR 6.425(D)(2)(b), and acquiesced in its validity and use. He was also afforded the opportunity to address the court regarding the sentence. MCR 6.425(D)(2)(c). Furthermore, once the sentence was imposed, he was permitted to request resentencing. MCR 6.429.

Moreover, our constitution guarantees a convicted criminal an appeal of right of both the conviction and sentence. Const 1963, art 1, § 20. On appeal in the Court of Appeals, a defendant may argue, brief, and document any alleged irregularity in the criminal procedure that he believes unfairly led to his conviction. Furthermore, the court must appoint counsel to represent an indigent defendant during an appeal of right if a timely motion for counsel is filed. MCR 6.425(E)(2). If dissatisfied with the outcome of the initial appeal, a defendant may request a rehearing from the Court of Appeals, MCR 7.203(A), and, of course, may apply to this Court for leave to appeal. MCR 7.302. Thus, our appellate system clearly affords a criminal defendant one fair and open multistaged and layered opportunity to appeal a criminal conviction or sentence.

Represented by counsel, defendant vigorously and competently utilized this right to appeal by

challenging the validity of his sentence. After thoroughly evaluating defendant's application for leave to appeal, this Court denied leave. Defendant utilized each available stage of the criminal justice system to challenge his sentence, and was found wanting. During all stages of this process, he failed to raise the specific grounds for the relief he now seeks. Generally, the failure to raise an issue on appeal constitutes abandonment of the issue and precludes further consideration of the issue. *In re Forfeiture of Certain Personal Property,* 441 Mich 77, 84; 490 NW2d 322 (1992).

Nevertheless, MCR 6.508(D) permits a convicted defendant the opportunity to challenge a conviction or sentence even after an unsuccessful appeal of right. MCR 6.508(D) provides:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

(i) in a conviction following a trial, but for the

alleged error, the defendant would have had a
reasonably likely chance of acquittal;

(ii) in a conviction entered on a plea of guilty,
guilty but mentally ill, or nolo contendere, the
defect in the proceedings was such that it renders
the plea an involuntary one to a degree that it
would be manifestly unjust to allow the conviction
to stand;

(iii) in any case, the irregularity was so offensive
to the maintenance of a sound judicial process that
the conviction should not be allowed to stand
regardless of its effect on the outcome of the case;

(iv) in the case of a challenge to the sentence,
the sentence is invalid.

The court may waive the "good cause" require-
ment of subrule (D)(3)(a) if it concludes that there
is a significant possibility that the defendant is
innocent of the crime.

The circumstances under which a defendant
may appeal under MCR 6.508(D) are narrowly
limited when the defendant has already utilized
the full gamut of the appellate process and is
found wanting. Without such restrictions, the
finality of judgments would be effectively under-
mined. The appellate process is not a game in
which defendants should be afforded unlimited and
unrestricted opportunities to attack convictions
and sentences that were duly imposed years be-
fore. Once a defendant has been granted his day in
court and his appeal by right, only under the most
egregious circumstances should he be permitted to
again attack the integrity of his conviction or
sentence. The people are entitled to presume that
he stands fairly and finally convicted. The elabo-
rate, detailed, and careful appellate procedures
that have evolved over 150 years of experience to
ensure the fair and just treatment of criminal
defendants should be discarded only with extreme
reluctance. Otherwise defendants "may rake up

alleged errors going back to the original conviction and beyond that to arrest, etc. Since a period of years may very well be involved, the problems of finding witnesses in our mobile society, the state of their memory, the availability of records and exhibits, etc., are very real and very significant." *People v Pickett,* 391 Mich 305, 307-308; 215 NW2d 695 (1974). Justice is best served by the final resolution of the criminal trial and any resulting appeals as contemporaneous as possible to the crime that bore the conviction and sentence.

On the other hand, this Court recognizes that some errors are so fundamental to our system of justice that no matter how long the delay in challenging the conviction or sentence, the courts must hear the appeal. These circumstances are exceedingly few and implicate the integrity of the justice system itself: (1) jurisdictional defects, (2) challenges that were not raised because of "good cause" *and* that constitute "actual prejudice," or (3) the conviction of a defendant when there is a significant probability that he is innocent of the crime for which he was convicted *and* actual prejudice.

B

Defendant contends that he meets the "good cause" and "actual prejudice" requirements to permit relief under MCR 6.508(D)(3). The majority does not consider this issue, finding that because the allegation constitutes a jurisdictional defect, he may now attack the prior adjudications. I examine this issue first because this Court is to avoid constitutional questions if possible, and whether defendant alleges a jurisdictional defect is based on the constitutional right to counsel.

Nevertheless, there appears to be no "good

cause" for the nearly decade-long delay in defendant's collateral attack. Good cause requires a showing of some impediment external to the petitioner. *Henderson v Cohn,* 919 F2d 1270, 1272 (CA 7, 1990).[1] If, for instance, a ruling retroactively applied reveals an unconstitutional deprivation at trial, good cause might be shown. On the other hand, no good cause exists when a delay occurs because of defendant's own conduct or unwarranted behavior. See, e.g., *People v Watroba,* 193 Mich App 124, 126-127; 483 NW2d 441 (1992) (finding that the .defendant did not show good cause when the delay in the motion for relief occurred because he was a fugitive from justice).

Defendant bases his demand for relief on a sentencing procedure rejected as unconstitutional in *Burgett v Texas,* 389 US 109; 88 S Ct 258; 19 L Ed 2d 319 (1967), and *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). Assuming the validity of defendant's allegations, after the release of *Burgett* and *Tucker,* a defendant would not have good cause to delay a challenge of counselless prior convictions utilized to enhance a sentence without an external impediment. Defendant pursued appeals of his sentence once throughout the court system well after the release of *Burgett* and *Tucker.* At the time of his conviction, his juvenile records existed. A decade later, after the administrative destruction of the records that may have conclusively closed the matter, he now collaterally attacks the adjudications. There has been no cogent reason expressed for this delay. Nor has defendant even alleged that there is a significant possibility that he is innocent

---

[1] See also *Murray v Carrier,* 477 US 478, 488; 106 S Ct 2639; 91 L Ed 2d 397 (1986) (good cause may be shown by "some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rules").

of the crime. Hence, I would hold that the good-cause requirement has not been met, and that MCR 6.508 precludes the challenge unless the good-cause and prejudice requirements may be waived.

## II

### A

With regard to whether there was a jurisdictional defect, the Court of Appeals found:

> The assertion that uncounseled juvenile adjudications were considered in exacerbation of defendant's sentence, in violation of *People v Leary,* 192 Mich App 463 [481 NW2d 757] (1992), represents, if established, a jurisdictional defect, *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972); *People v Moore,* 391 Mich 426 (1974), and thus the "good cause" requirement of MCR 6.508(D)(3)(a) is not, by its own terms, applicable. If, therefore, defendant establishes that uncounseled adjudications were so used, and that he was thereby prejudiced, but see *People v Watroba,* 89 Mich App 718, 724-725 [282 NW2d 196] (1979), he is entitled to resentencing, whether or not this issue might have been presented at some earlier stage. [Unpublished order of the Court of Appeals, entered June 2, 1993 (Docket No. 161218).]

This Court historically has interpreted the lack of jurisdiction in criminal prosecutions with regard to the ancient writ of habeas corpus. While other writs permitted a defendant to challenge other alleged errors, Michigan law has long understood our writ of habeas corpus to permit a criminal defendant to attack a criminal conviction only when the court that convicted and sentenced the defendant was without jurisdiction to try him for the crime in question. As Justice COOLEY stated for

the Court, "mere irregularities" are not jurisdictional defects. *Hamilton's Case,* 51 Mich 174, 175; 16 NW 327 (1883). Jurisdictional defects do not include a review of the merits of the case, *id.; In re Lamanna,* 263 Mich 62, 64; 248 NW 550 (1933), or evidentiary or procedural errors, *In re Stone,* 295 Mich 207, 211-212; 294 NW 156 (1940), but only those challenges that question the very authority of the court to convict and sentence the defendant, *In re Lamanna, supra* at 64.

Hence, even fundamental errors of criminal procedure may be insufficient to challenge the jurisdiction of the court. For instance, errors regarding the drafting of an information that might have warranted correction had a timely objection been made "are not so vital as to be destructive of the jurisdiction of the court." *In re Stone, supra* at 210.[2] Nor is a "claim that a plea of guilty was obtained through deception or duress" a jurisdictional defect. *In re Offill,* 293 Mich 416, 419; 292 NW 352 (1940). In like fashion, the introduction of evidence at trial in violation of the Fourth Amendment of the United States Constitution is not a jurisdictional defect because such claims "relate solely to the gathering and the preservation of evidence and, hence, challenge only the state's ability to prove their factual guilt." *People v New,* 427 Mich 482, 494; 398 NW2d 358 (1986) (holding that a plea of guilty waives such challenges). This is so because such objections "do not challenge the authority of the state to prosecute the defendants." *Id.* " 'If the court has jurisdiction of the person and the subject-matter, and could render a judgment upon a showing of any sufficient state of

_____

[2] See also *In re Eaton,* 27 Mich 1 (1873).

Statements to the contrary in *People v Johnson,* 396 Mich 424, 444; 240 NW2d 729 (1976), are simply unfounded obiter dicta. *People v New,* 427 Mich 482, 489; 398 NW2d 358 (1986).

facts, any judgment which it may render, however erroneous, irregular or unsupported by evidence,' " is no jurisdictional defect. *In re Joseph,* 206 Mich 659, 662; 173 NW 358 (1919), quoting 12 RCL 1194. Not all constitutional errors, therefore, deprive the court of jurisdiction, only those that impugn the very authority of the court to try and convict the criminal defendant.

On the other hand, by the very nature of jurisdiction, a "[d]efendant may always challenge whether the state had a right to bring the prosecution in the first place." *People v Johnson,* 396 Mich 424, 442; 240 NW2d 729 (1976). Jurisdictional defects are akin, but not identical, to those waived when a defendant pleads guilty,[3] because "the state has no legitimate interest in securing a conviction" without proving jurisdiction. *New, supra* at 491. In other words, "[s]uch rights and defenses 'reach beyond the factual determination of defendant's guilt and implicate the very *authority* of the state to bring a defendant to trial . . . .' " *Id.,* quoting *People v White,* 411 Mich 366, 398; 308 NW2d 128 (1981) (MOODY, J., concurring in part and dissenting in part). Thus, a jurisdictional defect or its equivalent has been found when the defendant raises the issue of improper personal jurisdiction,[4] improper subject matter jurisdiction,[5] double jeopardy,[6] imprison-

---

[3] Nonjurisdictional defects are waived by a guilty plea. *People v Ginther,* 390 Mich 436, 440; 212 NW2d 922 (1973).

[4] See, e.g., *People v Blume,* 443 Mich 476; 505 NW2d 843 (1993) (finding that Michigan courts had no jurisdiction to try a defendant for alleged acts that occurred in Florida because the state failed to allege sufficient mens rea that the detrimental effects of his actions would occur in Michigan); *People v Veling,* 443 Mich 23; 504 NW2d 456 (1993) (noting that the circuit court has only limited jurisdiction to hear certain offenses committed by juveniles).

[5] See, e.g., *In re Van Dyke,* 276 Mich 32, 34; 267 NW 778 (1936) (finding, under a writ of habeas corpus, that Michigan had proper jurisdiction to try the defendant although a federal statute also criminalized the defendant's conduct).

[6] *Johnson, supra* at 445. *Johnson* involved whether a guilty plea

ment when the trial court had no authority to sentence defendant to the institution in question,[7] and the conviction of a defendant for no crime whatsoever.[8]

B

In the instant case, whether the alleged improprieties are jurisdictional defects under Michigan law is dubious. *In re Long,* 266 Mich 369, 371; 254 NW 133 (1934) (holding that whether the defendant was denied the right to counsel at trial could not be examined under the writ of habeas corpus); *People v Price,* 23 Mich App 663, 670; 179 NW2d 177 (1970) (holding that the alleged denial of the right to counsel in juvenile cases is not a jurisdictional defect). Yet, the United States Supreme Court, as a matter of federal law, has found that criminal defendants possess a constitutional right to collaterally attack a prior conviction used to enhance their sentence when defendants allege that prior convictions occurred in violation of the Sixth Amendment right to counsel. *Custis v United States,* 511 US —; 114 S Ct 1732; 128 L Ed 2d 517 (1994). In *Custis,* 114 S Ct 1737, the Court found that clear language of the Armed Career Criminal Act of 1984, 18 USC 924(e) reveals that "Congress did not intend to permit collateral attacks on prior convictions under § 924(e)." The Court, however, found that the defendant possessed a constitutional right to collaterally chal-

---

waived such an objection to double jeopardy. The Court found that "[t]hese rights are similar to the jurisdictional defenses in that their effect is that there should have been no trial at all. . . . Because this right goes to the very heart of the government's ability to place defendant on trial, the subsequent guilty plea does not foreclose defendant from raising the defense." *Id.* at 444.

[7] *In re Allen,* 139 Mich 712, 714; 103 NW 209 (1905).

[8] *In re Bourne,* 300 Mich 398, 401-402; 1 NW2d 439 (1942).

lenge his prior convictions because they were based on the right to counsel. Acknowledging its holding as a "somewhat expansive notion of 'jurisdiction,'" the Court found that allegations that a defendant was denied an attorney constitute a jurisdictional defect. *Id.* Thus, the Court ruled that collateral attacks based on the "right to have appointed counsel established in *Gideon* [*v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963)]" could not be constitutionally denied by otherwise applicable procedural bars. 114 S Ct 1738.[9] Hence, I join the majority's affirmance of the Court of Appeals ruling that the challenge may be heard under MCR 6.508(D).

III

Similarly, I join the majority's decision that a remand is not necessary because, as a matter of law, defendant is incapable of proving that his prior convictions were constitutionally infirm.

Defendant contends that his sentence is invalid because the court utilized prior juvenile adjudications to compute his sentence when those prior adjudications occurred without counsel and valid waiver of the right to counsel. While defendant challenges the constitutional validity of his prior convictions, he bears the burden of showing that those convictions were invalid. MCR 6.508. Defen-

---

[9] The Court, however, also found that "there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a 'stipulated facts' trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all. *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938)." *Id.* The Court also noted that to rule otherwise would undermine "the finality of judgments" as well as be administratively difficult. 114 S Ct 1739.

dant contends that he has met his burden because the state is unable to produce records documenting that he was provided with or validly waived counsel in his prior juvenile adjudications. At issue, therefore, is the allocation of the burden of proof when a defendant collaterally challenges the use of a prior conviction for sentence enhancement purposes because it allegedly occurred without counsel and without a valid waiver of the right to counsel. I would hold that the burden of proof shifts to the defendant making such a challenge once the prosecution has provided a certified copy of a prior conviction or an equivalent proffer, because it is permitted under the federal constitution and furthers the finality of judgments, judicial economy, and the orderly administration of justice.

A

"Perhaps the privilege most important to the person accused of crime, connected with his trial, is that to be defended by counsel." 1 Cooley, Constitutional Limitations (8th ed), p 696. Under historical English criminal law, "however, the aid of this profession was denied in the very cases in which it was needed most . . . ." *Id.* at 698. To address this injustice, the Founders of our nation drafted and ratified the Sixth Amendment of the United States Constitution, mandating that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This palladium of liberty, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant the right to be represented by counsel. *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963).

To maintain its integrity, a conviction obtained

in violation of the right to counsel may not be "used against a person either to support guilt or enhance punishment for another offense . . . ." *Burgett, supra* at 115.[10] This is so because a sentence imposed in light of such convictions would be "founded at least in part upon misinformation of constitutional magnitude," and " 'on the basis of assumptions concerning his criminal record which were materially untrue.' " *Tucker, supra* at 447, quoting *Townsend v Burke,* 334 US 736, 741; 68 S Ct 1252; 92 L Ed 1690 (1948). Moreover, to validly waive the right to counsel, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v Cochran,* 369 US 506, 516; 82 S Ct 884; 8 L Ed 2d 70 (1962). Defendant, therefore, correctly notes that a sentence which utilizes prior adjudications in violation of the right to counsel are invalid. Whether defendant has met his burden to show that his sentence was improper, however, is another issue.

In *Moore, supra* at 440-441, this Court, relying almost exclusively on federal authority, outlined the procedures to determine whether a prior conviction could be utilized in a sentencing context in Michigan if a defendant alleges that the prior

---

[10] Whether prior juvenile convictions must have been obtained following advice of counsel to meet the requirements of *Burgett* is not resolved in the instant case because the issue was not raised on the prosecutor's application for leave to appeal. MCR 7.302(F). Hence, I assume for the purposes of this appeal that *Burgett* applies. Nevertheless, the question has in the past divided our Court of Appeals. Compare *People v Himmelein,* 177 Mich App 365, 381; 442 NW2d 667 (1989) (holding *Burgett* inapplicable) to *People v Leary (On Remand),* 198 Mich App 282, 285; 497 NW2d 922 (1993) (holding *Burgett* applicable). *Leary,* however, currently binds the Court of Appeals. Administrative Order No. 1990-6, 436 Mich lxxxiv; Administrative Order No. 1993-4, 442 Mich cxiii. But see *Nichols v United States,* 511 US —; 114 S Ct 1921, 1927; 128 L Ed 2d 745 (1994) (holding that uncounseled misdemeanor convictions that did not result in imprisonment may be utilized to enhance a subsequent sentence).

conviction was obtained without the representa-
tion of counsel and valid waiver of that right:

> [T]he defendant must (1) present prima facie
> proof that a previous conviction was violative of
> *Gideon,* such as a docket entry showing the ab-
> sence of counsel or a transcript evidencing the
> same; or (2) present evidence that he has requested
> such records from the sentencing court and it has
> failed to reply or has refused to furnish copies of
> records within a reasonable period of time, say
> four weeks. Upon such presentation, either (1) or
> (2), the burden will then be upon the prosecutor to
> establish the constitutional validity of the prior
> conviction. Thus, if the prosecutor contends that
> the defendant waived counsel, the burden will be
> on him to show affirmative record evidence of
> waiver. . . .
> Unless the prosecutor furnishes such evidence
> within one month of the defendant's motion, the
> judge shall set the matter for an early hearing and
> order the production of the defendant at the hear-
> ing.

Defendant contends that the inability of the
state to provide the records in question constitutes
a failure to reply and a refusal to furnish copies of
the records within a reasonable period of time.
Yet, the state appropriately replied to defendant's
request for the records by notifying him of their
expungement according to state procedures.[11] This
is not a case in which the trial court has purpose-
fully ignored or refused to comply with a defen-
dant's request for records, but one in which the
trial court is simply unable to comply with the
request because of the expungement of the records.
Thus, defendant has failed to show that the state
has violated the procedures dictated in *Moore.*
Thus, I join the majority in overruling those au-
thorities finding that the mere inability to furnish

---

[11] See MCR 5.925; MCL 712A.18e; MSA 27.3178(598.18e).

records, even after responding to a defendant's
request, violated the dictates of *Moore,* see, e.g.,
*People v Hannan (After Remand),* 200 Mich App
123; 504 NW2d 189 (1993).

B

1

Defendant, however, also contends that, as a
matter of federal constitutional law, as well as
state policy, the burden of proof should be placed
on the state when a criminal defendant challenges
the use of a prior conviction in a sentencing hear-
ing even after the state has presented sufficient
proof of the existence of the prior conviction. The
majority all but ignores this argument, implicitly
holding that *Moore* is somehow constitutionally
compelled and immune from modification. Because
this Court is obligated to enforce the constitution
and grant defendant due weight to his constitu-
tional claim, I believe that we must address this
issue.

I would hold that the placing of the burden on
the state is not compelled by the United States
Constitution. *Parke v Raley,* 506 US —, —; 113 S
Ct 517, 522; 121 L Ed 2d 391 (1992).[12] Upon review

---

[12] In *Parke,* the defendant pleaded guilty to a robbery charge in a
Kentucky state court. He attempted to suppress the evidence of two
prior burglary convictions in his persistent felony offender proceeding.
The defendant contended that the prior convictions could not be
considered because no trial transcripts existed, thereby prohibiting
the state from affirmatively showing that his guilty pleas were
knowing and voluntary. Under Kentucky procedures, the state "must
prove the existence of the judgment on which it intends to rely. Once
this is done, a presumption of regularity attaches, and the burden
shifts to the defendant to produce evidence that his rights were
infringed or some procedural irregularity occurred in the earlier
proceeding." *Id.,* 113 S Ct 520. Only then does the burden shift back
to the state. *Id.*

Closely examining the Kentucky procedures, the Court affirmed
their constitutionality:

of both *Tucker* and *Burgett,* it is clear that the *Moore* Court chose a procedure that was neither set forth in nor required by either decision. Indeed, in *Parke,* the Court found the "deeply rooted . . . 'presumption of regularity' that attaches to final judgments" and that permits courts to assume that prior judgments occurred in accordance with the law applies "even when the question is waiver of constitutional rights." *Id.,* 113 S Ct 523. In the context of a collateral attack challenging the constitutionality of a prior conviction during a sentencing proceeding, the Court found that a state could rely on the presumption of regularity to place the burden of proof on a defendant to show the unconstitutionality of a prior conviction once the state presented a sufficient proffer that the prior conviction occurred. *Id.*

Hence, federal law, refusing to dictate the fine details of state criminal procedure, mandates in the instant case only that the state "bear[ ] an initial burden of proving the fact of conviction [that] will ordinarily be satisfied by production of a certified copy of the conviction or an equivalent proffer." *United States v Unger,* 915 F2d 759, 761 (CA 1, 1990). Once this threshold is met, the "conviction [may be] presumed valid for purposes of applying the sentencing guidelines. The burden [may] then shift[ ] to the defendant to establish

---

Respondent . . . never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. . . .

There is no good reason to suspend the presumption of regularity here. . . . On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. [*Id.,* 113 S Ct 523-524. Citations omitted.]

The Court rejected the proposition that the defendant's difficulty of obtaining evidence justified shifting the burden to the prosecution, and also found that there was "no historical tradition or contemporary practice indicating that Kentucky's scheme violates due process." *Id.,* 113 S Ct 525.

that the earlier conviction was constitutionally infirm . . . ." *Id.*[13] Indeed, Supreme Court "precedents make clear . . . that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Parke, supra,* 113 S Ct 524.[14] Hence, to the extent *Moore* rested on the understanding that it was mandated by federal jurisprudence, it may be modified.[15]

[13] See also *Parke, supra,* 113 S Ct 522-526; *United States v Mulloy,* 3 F3d 1337, 1339 (CA 9, 1993); *United States v Hoffman,* 982 F2d 187, 191 (CA 6, 1992); *United States v Banks,* 964 F2d 687, 693 (CA 7, 1992); *United States v Newman,* 912 F2d 1119, 1121-1122 (CA 9, 1990).

[14] Defendant notes that the defendant in *Parke* challenged the propriety of his underlying conviction on the basis of a claim that the state failed to advise him regarding the right to remain silent, the right to a jury trial, and the right to confront one's accusers as mandated by due process as found in *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969). Defendant, therefore, suggests that *Parke* is inapposite because the underlying alleged constitutional infirmity did not involve a denial of the right to counsel. Nevertheless, the language and rationale of *Parke* are not so limited. Indeed *Parke* is written in sweeping language that discusses the propriety of every state's system of allocating the burden of proof in all cases involving recidivist sentencing and challenges to the validity of prior convictions. *Commonwealth v Quinones,* 424 Mass 423, 434, n 7; 608 NE2d 724 (1993) ("It is clear now that the burden is on the defendant, in the sentencing enhancement context, to rebut the presumption that prior convictions are valid"). See also *Mulloy,* n 13 *supra* at 1339 (noting that "*Parke* strongly hints that the presumption of regularity upon which it relied . . . applies to the collateral review of any prior conviction").

Accordingly, federal law and sentencing guidelines place the burden on the defendant collaterally challenging prior 851(c)(2) and Federal Sentencing Guidelines Manual, § 4A1.2, p 308, n 6. In fact, federal law prohibits collateral challenges of prior convictions that occurred more than five years before the date of the information challenging the prior conviction. 21 USC 851(e).

Furthermore, federal law holds that "an uncounseled conviction valid under *Scott* [*v Illinois,* 440 US 367; 99 S Ct 1158; 59 L Ed 2d 383 (1979)] may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." *Nichols, supra,* 114 S Ct 1927.

[15] Not unlike the federal constitution, the fundamental law of Michigan guarantees that "[i]n every criminal prosecution, the accused shall have . . . the assistance of counsel for his defense . . . ."

2

Nevertheless, defendant posits that *Moore* should be modified to place the entire burden of proof on the prosecution as a matter of policy. Defendant argues in the alternative that at the very least *Moore* should not be altered. Defendant suggests that placing the burden entirely on the prosecution is consistent with basic principles found within the American criminal justice system. Placing the burden on the government, defendant contends, would further the goals of the accusatorial system: protection of the innocent, checking the potentially abusive power of the government, and recognition of the imbalance of power between government and the accused.

Leaving aside the propriety of this Court adopting such a course, those states that place the burden of proof on defendants in similar circumstances still maintain the accusatorial system.[16] This is so because of the nature of collateral challenges. After all, at issue in the instant case is not the burden of proof at trial or even on direct appeal, but merely during a collateral challenge of a prior conviction during sentencing. For the same reasons undergirding MCR 6.508(D) (and assuming good cause), when examining the procedures concerning collateral challenges, this Court has found "that considerations of finality and administrative consequences must become part of the process

Const 1963, art 1, § 20. The Michigan Constitution also ensures that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. Defendant, however, has failed to identify any relevant factors justifying an alternative or more expansive interpretation of the Michigan Constitution when compared to the federal document. See, e.g., *People v Harding*, 53 Mich 481, 485; 19 NW 155 (1884); *Sitz v Dep't of State Police*, 443 Mich 744, 763; 506 NW2d 209 (1993).

[16] See, e.g., *Smith v State*, 477 NE2d 857 (Ind, 1985), *Disheroon v State*, 687 SW2d 332 (Tex Crim App, 1985), *In re Kean*, 520 A2d 1271 (RI, 1987), and *State v Triptow*, 770 P2d 146 (Utah, 1989). Cf. *People v Harris*, 61 NY2d 9; 459 NE2d 170 (1983).

with which we assure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure." *People v Ingram,* 439 Mich 288, 293-294; 484 NW2d 241 (1992). In fact, " '[t]he strong interest in preserving the finality of judgments, as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified.' " *Id.* at 300, n 7 (citations omitted), quoting *Henderson v Kibbe,* 431 US 145, 154, n 13; 97 S Ct 1730; 52 L Ed 2d 203 (1977). Hence, Michigan law has historically utilized this deeply rooted presumption of regularity to reject collateral attacks in a variety of contexts.[17] Only because " '[t]he denial of the right to counsel impugns the integrity of the conviction, raising doubts about the guilt of the accused . . . [is] the use of a counselless conviction . . . forbidden in collateral proceedings notwithstanding that the defendant did not raise the issue on direct review.' " *Ingram, supra* at 296, quoting *People v*

---

[17] See, e.g., *People v Auerbach,* 176 Mich 23, 43; 141 NW 869 (1913) (finding that appointment of a special prosecutor was valid despite a silent record showing the need for such a prosecutor because of the presumption of regularity); *People v Vester,* 309 Mich 409, 412; 15 NW2d 686 (1944) (holding that "[w]e must assume that the trial court made a proper investigation of the nature of the case; and that the plea was freely made with full knowledge of the nature of the accusation and without undue influence as required by 3 Comp Laws 1929, § 17328 [Stat Ann § 28.1058]"); *People v Carson,* 19 Mich App 1, 7; 172 NW2d 211 (1969) (utilizing the presumption of regularity to find "it is more probable that a trial judge taking a guilty plea in 1934 did not inform an accused person of his right to counsel"); *People v Beal,* 27 Mich App 78, 82; 183 NW2d 318 (1970) (utilizing the presumption of regularity to find that the court followed "Rule 35A [which] specifically instructs the trial court in such a situation to inform the defendant of his right to appointed counsel"); *People v Leon Brown,* 35 Mich App 173, 175; 192 NW2d 337 (1971) (holding that "presumption of regularity . . . precludes us from finding that the trial judge considered [incorrectly admitted] hearsay testimony in arriving at his judgment"); *People v Purcell,* 174 Mich App 126, 129; 435 NW2d 782 (1989) ("We are unaware of any rule requiring a minimum length of time for deliberation by the trial court as trier of fact . . . . Absent a demonstration to the contrary, we presume that the proceedings were proper and that the trial court discharged its duties in a constitutional manner").

*Crawford,* 417 Mich 607, 615; 339 NW2d 630 (1983)
(BRICKLEY, J., concurring).

There is no persuasive reason to disregard the
presumption of regularity to the denigration of the
finality of judgments, judicial economy, and the
orderly administration of justice. Because
" ' "[e]very inroad on the concept of finality under-
mines confidence in the integrity of our proce-
dures; and, by increasing the volume of judicial
work, inevitably delays and impairs the orderly
administration of justice," ' " collateral attacks
should be discouraged. *Ingram, supra* at 297, quot-
ing *Crawford, supra* at 616 (BRICKLEY, J., concur-
ring), quoting *United States v Timmreck,* 441 US
780, 784; 99 S Ct 2085; 60 L Ed 2d 634 (1979). To
permit collateral attacks of prior convictions sim-
ply on the basis of the bald assertion of a defen-
dant or a missing transcript ensures "[p]erpetual
disrespect for the finality of convictions [that]
disparages the entire criminal justice system."
*Ingram, supra* at 301, n 9. On the other hand, by
ensuring that defendants must possess strong evi-
dence to successfully challenge a prior conviction,
placing the burden of proof on the defendants
strengthens respect for the finality of judgments
and the orderly administration of justice. Simi-
larly, placing the burden on defendants furthers
judicial economy. This is especially true because a
defendant is the party "who participated in the
earlier proceedings resulting in conviction, [and] is
often in the best position to challenge the convic-
tion on constitutional grounds. . . . [F]or example,
[the prosecution may not have been] a party to the
contested state court proceedings." *United States v
Newman,* 912 F2d 1119, 1122 (CA 9, 1990). Be-
cause the orderly administration of justice is
founded on finality of judgments and an interest in
judicial economy, I would hold that courts appro-
priately must rely on the deeply rooted presump-
tion of regularity to place the burden on a defen-

dant in a collateral challenge of a prior conviction once the prosecution presents sufficient evidence of the prior conviction. *Parke, supra,* 113 S Ct 522-525.

3

In summary, defendant contends that his prior juvenile adjudications were without counsel. Yet, "[t]hat a juvenile conviction was uncounseled does not render it invalid; if the right to counsel was made clear, and was sentiently waived, the absence of counsel would not in and of itself forestall use of the ensuing conviction in tabulating the defendant's criminal history score." *Unger, supra* at 761-762. Moreover, " 'bald assertions . . . that he was without counsel at his prior convictions are insufficient to overcome the presumption of regularity of the records that were before the trial court in this case.' " *Disheroon v State,* 687 SW2d 332, 334 (Tex Crim App, 1985) (en banc), quoting *Maddox v State,* 591 SW2d 898, 903 (Tex Crim App, 1979). "[S]elf-serving testimony, see *United States v Boyer,* 931 F2d 1201, 1205 (CA 7, 1991), does not overcome the court's finding that all was in 'normal customary proper order.' " *United States v Banks,* 964 F2d 687, 693 (CA 7, 1992). Accordingly,

> "[t]he failure of the state to provide a transcript when, after good faith effort, it cannot physically do so, does not automatically entitle a defendant to a new trial. . . . 'Doubts should be resolved in favor of the integrity, competence and proper performance of their official duties by the judge and the State's attorney. . . . If any presumption is to be indulged it should be one of regularity rather than of irregularity. . . . Such a presumption of regularity indicates that the court constitutionally discharged rather than unconstitutionally disregarded its state and federal duties.' " [*People v*

*Iacopelli,* 141 Mich App 566, 568; 367 NW2d 837 (1985).][18]

In the instant case, defendant does not contest the existence of his prior juvenile convictions. Furthermore, defendant does not contest that the law required the granting of counsel or the waiver of the right to counsel at the time of his juvenile adjudications. Moreover, defendant conceded the validity of the presentence notations of the adjudications at issue at the original sentencing hearing. Thus, the state has met its initial burden. Defendant has failed to present any evidence that he was denied counsel except his bald assertions. Without more, the presumption of regularity attaches and preserves the validity of adjudications. Hence, I concur with the majority's holding that defendant's request for relief must be denied.[19]

BOYLE and GRIFFIN, JJ., concurred with RILEY, J.

---

[18] See also *United States v Goodheim,* 686 F2d 776, 777 (CA 9, 1982) (" 'When a prior conviction is a number of years old and there is no transcript of the taking of the plea, "evidence of the trial court's practice is precisely the evidence which the government will have at its disposal" ' "). A court may also rely upon " 'the custom and practice of trial attorneys and judges to refute allegations of procedural infirmities.' " *United States v Brown,* 899 F2d 677, 679 (CA 7, 1990). If the custom of the courts involved in the prior convictions, therefore, was either to provide a defendant with counsel or to ensure a valid waiver of the right to representation, and no trial transcript existed, that custom may be relied upon by the court.

[19] Defendant's final contention that the opinion of the Court of Appeals should not be reversed because it is not clearly erroneous is totally devoid of merit. Issues of law are reviewed by this Court de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).