*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* LT.

---

DEC,

        Petitioner-Appellee,

v

LT,

        Respondent-Appellant.

FOR PUBLICATION
June 23, 2022
9:15 a.m.

No. 356667
Clare Circuit Court
LC No. 18-900069-PH

---

Before: GLEICHER, C.J., and K. F. KELLY and PATEL, JJ.

PER CURIAM.

Petitioner appeals by right the trial court's judgment of sentence entered after finding respondent guilty of criminal contempt of court on the basis of a violation of a non-domestic personal protection order (PPO). Petitioner contends he was deprived the effective assistance of counsel during the relevant show-cause hearing because his attorney failed to move for a directed verdict after petitioner attempted to rest without producing evidence of respondent's guilt. Petitioner also argues the trial court deprived him of his right to a fair hearing before a neutral judge because the trial court allowed petitioner—unrepresented by counsel—to proceed with the contempt charge, assisted petitioner with the presentation of his case, and rendered a verdict tainted by prior involvement with the parties. Because we conclude respondent was deprived of the effective assistance of counsel during the show-cause hearing, we reverse and remand for a new hearing. For the reasons explained below, we also order that the hearing be conducted before a different judge, who is instructed to follow the unambiguous procedure set forth in MCL 764.15b and MCR 3.708.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner and respondent have lived next to one another in Marion, Michigan since 2014. On February 12, 2018, petitioner filed a petition for an ex parte nondomestic PPO against

respondent alleging that on February 10, 2018, respondent was outside petitioner's bedroom window and was yelling that petitioner had lied in court and that he was going to kill petitioner.

On February 12, 2018, the trial court granted the petition and entered an ex parte PPO against respondent. The court found that respondent had threatened to kill petitioner on three separate occasions on February 10, 2018 and ordered that respondent be prohibited from stalking petitioner, including "following or appearing within sight of the petitioner," "approaching or confronting the petitioner in a public place or on private property," or "entering onto or remaining on property owned, leased, or occupied by the petitioner."

On February 26, 2018, petitioner filed a motion to show cause for a violation of the PPO, alleging respondent was "swearing and threatening me on 2-24-18 and within my sight." The trial court held the show-cause hearing on June 18, 2018, in which petitioner testified that on February 24, 2018, at approximately 3:30 a.m., respondent came outside and was yelling and intoxicated. Petitioner testified that later that morning at 6:30 a.m., respondent was outside on his deck making threatening statements toward petitioner. Petitioner also stated that on March 28, 2018, respondent came onto his property while intoxicated and stumbled into petitioner's yard, and on May 7, 2018, respondent leaned over the trunk of his car and stared at petitioner while petitioner worked in their shared driveway. For his part, respondent testified that he was drinking on February 24, 2018, and began singing outside, at which point petitioner came outside and started screaming at him. Respondent said he called petitioner a liar and then they both went into their houses, but denied using any obscene language toward petitioner.

The trial court found that respondent violated the PPO on February 24, 2018, by shouting threats to hurt and kill petitioner. The court also found that respondent violated the PPO by entering onto petitioner's property on March 28, 2018, and by deliberately appearing within the site of petitioner on May 7, 2018. Accordingly, the court found respondent guilty of criminal contempt. On July 23, 2018, the court sentenced respondent to 30 days in jail.

Approximately two years later, on July 13, 2020, petitioner filed an affidavit and second motion to show cause alleging another violation of the PPO by respondent. The motion alleged that on July 11, 2020, petitioner was inside his house when he saw respondent "standing behind my pickup." An argument ensued about petitioner's dog being outside, at which point respondent called the police. The trial court granted the motion and ordered that respondent show cause why he should not be held in contempt of court for violating the PPO.

On February 4, 2021, the parties appeared for the show-cause hearing. Petitioner, who was unrepresented by counsel, testified—under questioning by the court—that the allegations he wrote about in the July 13, 2020 motion were true. The court asked petitioner if he wanted to testify about anything else regarding what occurred on July 11, 2020, and petitioner responded that he did not. Petitioner also stated that he had no other witnesses to call or evidence to present.

During cross-examination[1] by respondent's counsel, the following exchange occurred between the trial court and petitioner:

Q. And I apologize for not addressing this earlier, but when you wrote that you looked out from your house and you saw [LT] standing behind your pickup, was your—where was your pickup truck when he was standing—

A. Parked. Parked in front of my house.

Q. All right. Was it on your land?

A. Yes.

Q. At Tedrow Trail?

A. Yes.

Q. Okay. And was [LT] standing on your land at that time too?

A. He was in my parking area, yes, on my property, standing behind my pickup. He had his dog with him on a leash, about 30-foot long.

Counsel for respondent also questioned petitioner about respondent's location during the neighbors' altercation:

Q. This is going to take it out of order a little bit, but I just want to make sure, you say that [LT] was behind your truck, correct?

A. Yeah.

Q. But he was on your property?

A. Yes.

Q. Did you tell law enforcement that?

A. That he was on my property? I don't think so. I might have. I don't know if I told them that or not, but he was on my property.

---

[1] After petitioner informed the trial court he had no other testimony or evidence to present, the trial court stated that petitioner "essentially ha[d] rested as far as his motion" and asked counsel for respondent if he had any evidence or argument to present in opposition to the motion. The trial court later corrected the record that respondent was to be first given an opportunity to cross-examine petitioner before putting on his own evidence.

*Q.* Well, the reason I'm asking is, if he was on your property, regardless of the PPO, he could have been trespassing, right?

*A.* Yes.

*Q.* And you had a deputy sheriff there taking a report on the PPO violation, correct?

*A.* Yes.

*Q.* And your understanding was [LT] was not allowed to be on the property; is that correct?

*A.* Yes.

*Q.* But you did not tell law enforcement that he was in fact on your property at the time that you made your report?

*A.* No. No.

After petitioner rested, respondent testified that he called police at 10:30 a.m. on July 11, 2020, because he was taking his dog for a walk and checking the mail when petitioner's dog came out and attacked them. Respondent denied standing behind petitioner's truck or being on petitioner's property. During his presentation, respondent's attorney stated, "If this were a trespassing trial, I would have moved for [a] directed verdict before I put my client on the stand, and I again—I would make that motion now."

The trial court found that petitioner was "was being truthful when he asserted that [LT] had entered onto his property and was standing behind his . . . pickup truck." Conversely, the trial court found respondent "was not being truthful when he indicated he was just walking down the road minding his own business, walking his dog, when he was set upon by [LT]'s dog." Accordingly, the court found respondent guilty of criminal contempt of court for violating the PPO by knowingly entering onto the land of petitioner on July 11, 2020, and sentenced respondent to 10 days in jail.[2] This appeal followed.

## II. STANDARD OF REVIEW

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.* To preserve the issue of whether counsel rendered ineffective assistance, the defendant must move for a new trial or evidentiary hearing in

---

[2] The trial court suspended the jail sentence contingent on respondent paying his assessed fines and fees by April 5, 2021. The record is unclear whether respondent paid these fines.

the trial court or move for remand on appeal. *Id.* Where a defendant fails to preserve a claim of ineffective assistance of counsel by failing to seek a *Ginther*[3] hearing in the trial court, this Court's "review is limited to mistakes apparent on the record." *Id.*

## III. ANALYSIS

### A. DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

Respondent first argues that he was denied his right to the effective assistance of counsel when his attorney failed to move for a directed verdict after petitioner failed to present sufficient evidence of his guilt. We agree, and therefore remand for a new hearing.

The Sixth Amendment of the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." See also Const 1963, art 1, § 20.[4] "The right to counsel also encompasses the right to the effective assistance of counsel." *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996).

"To establish ineffective assistance of counsel, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus*, 278 Mich App 174, 185; 748 NW2d 899 (2008). "Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise." *Petri*, 279 Mich App at 410.

Respondent was bound by the terms of a nondomestic PPO issued under MCL 600.2950a, which prohibits the individual subject to the PPO from engaging in behavior that would constitute stalking. Violation of a nondomestic PPO subjects the respondent to the criminal contempt powers of the court and, upon a finding of guilt, permits incarceration for up to 93 days and a fine of up to $500. MCL 600.2950a(23). Criminal contempt is a "quasi-crime" because it is " 'not intended to punish conduct proscribed as harmful by the general criminal laws,' " but rather is " 'designed to serve the limited purpose of vindicating the authority of the court.' " *DeGeorge v Warheit*, 276 Mich App 587, 598-599; 741 NW2d 384 (2007), quoting *Young v United States ex rel Vuitton et Fils SA*, 481 US 787, 800; 107 S Ct 2124; 95 L Ed 2d 740 (1987). A criminal contempt proceeding "requires some, but not all, of the due process safeguards of an ordinary criminal trial." *In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987). "A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel." *DeGeorge*, 276 Mich App at 592. In order to find a defendant guilty of criminal contempt, "a willful disregard or disobedience of a court order must be clearly and unequivocally shown" and proven beyond a reasonable doubt. *Id.* Moreover, "[t]he defendant has a presumption of innocence and a right

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] The Michigan Constitution's guarantee of the right to counsel is coextensive with the Sixth Amendment's guarantee. *People v Foster*, 319 Mich App 365, 390 n 12; 901 NW2d 127 (2017).

against self-incrimination." *In re Contempt of Henry*, 282 Mich App 656, 669; 765 NW2d 44 (2009).

"In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Riley*, 468 Mich 135, 139-140; 659 NW2d 611 (2003). Defense counsel can be ineffective by failing to move for a directed verdict where such a motion would have been successful. See *id*. at 141-142.

In this case, respondent asserts his attorney rendered ineffective assistance by failing to move for a directed verdict at the time petitioner attempted to rest, because petitioner had not presented evidence of respondent's guilt. At the show-cause hearing, petitioner testified that he filed a motion to show cause why respondent should not be held in criminal contempt of court for violating the terms of the PPO. Petitioner also responded affirmatively that the statements written in his affidavit and motion were true at the time he wrote them. At that point, petitioner stated that he had no further testimony to give regarding his allegations, and he had no other witnesses to call or evidence to present. The trial court then had the following exchange with respondent's counsel:

> *Court*. [T]he petitioner essentially has rested as far as his motion. Is there anything—any evidence or any argument you want to present in opposition to that motion?

> *Counsel*. Yes, Your Honor. I would like to inquire of the petitioner, whether I call him as a witness or I am cross-examining him, either way I am asking that he be treated as an adverse witness and that I be allowed to lead.

> *Court*. Thank you, sir. That's a reasonable request, and I will grant it.

On cross-examination, petitioner testified that respondent came onto his property when respondent was standing behind petitioner's pickup truck. Petitioner admitted he did not report to police that respondent had entered onto his property when he gave a report of what occurred on July 11, 2020. This testimony regarding the alleged trespassing by respondent ultimately formed the basis for the trial court's determination that respondent was guilty of criminal contempt of court, as the trial court found respondent violated the PPO by "knowingly entering onto the land" of petitioner on July 11, 2020.

We conclude respondent was denied the effective assistance of counsel when respondent's attorney failed to move for a directed verdict after petitioner attempted to rest his case. First, the decision to not immediately move for a directed verdict, and to instead cross-examine petitioner, was objectively unreasonable. At the time petitioner indicated that he had no additional evidence to present, he had not introduced any evidence to support a finding that respondent was guilty of criminal contempt. Petitioner merely affirmed that the statements he wrote in his affidavit and motion were accurate, but he had not actually testified about any of those allegations. The affidavit itself—which was not admitted during the hearing—was inadmissible hearsay. See MRE 802. Therefore, when the trial court stated petitioner rested and asked respondent's counsel if he had any evidence to present, counsel should have immediately moved for a directed verdict. There

was no tactical or strategic reason to cross-examine petitioner at that point and, as explained below, the motion for directed verdict would have rested on meritorious grounds. See *Foster*, 319 Mich App at 391 ("[C]ounsel is not ineffective for failing to make a futile motion."). Had respondent's counsel moved for a directed verdict and the trial court denied the motion, he could have then elected to call petitioner as a witness during respondent's presentation of evidence.[5] By choosing to cross-examine petitioner instead of moving for a directed verdict—despite petitioner presenting no evidence to meet his burden of proof—respondent's counsel allowed for the opportunity for evidence of respondent's guilt to be introduced. Counsel's performance was, therefore, objectively unreasonable.

We also conclude counsel's error prejudiced respondent because there is a reasonable probability that, but for the error, respondent would have been acquitted. See *Uphaus*, 278 Mich App at 185. When petitioner attempted to rest, he had not introduced any evidence to prove beyond a reasonable doubt that respondent willfully disregarded the trial court's order—that being the ex parte PPO issued on February 12, 2018. No rational trier of fact could have found that the essential elements of criminal contempt of court had been proven beyond a reasonable doubt because petitioner had not presented any actual evidence of guilt, instead relying on his motion and affidavit. See *Riley*, 468 Mich at 139-140. Accordingly, counsel's motion for a directed verdict would have been meritorious had it been made immediately after petitioner attempted to rest his case. In other words, because counsel's error affected the outcome of the proceedings, respondent has established he received ineffective assistance of counsel and is entitled to a new hearing. See *People v Armstrong*, 490 Mich 281, 294; 806 NW2d 676 (2011) (concluding the defendant was denied effective assistance of counsel and remanding for new trial).

## B. THE TRIAL COURT LACKED JURISDICTION TO CONDUCT A CONTEMPT HEARING

We also agree with respondent that the trial court denied him the right to a fair hearing before a neutral judge because the court allowed petitioner to prosecute the contempt proceedings unrepresented, assisted petitioner with the presentation of his case, and otherwise rendered a verdict tainted by the court's prior involvement with the parties. According to respondent, the statute and court rules related to criminal contempt proceedings require that a prosecutor or private attorney to pursue a criminal contempt charge, and the absence of either in this case put the trial court in the dual role of advocate and fact-finder. See MCL 764.15b(7) ("The prosecuting attorney shall prosecute a criminal contempt proceeding . . . initiated by a show cause order under subsection (4), unless the party who procured the personal protection order retains his or her own attorney for the criminal contempt proceeding."); MCR 3.708(G) ("In a criminal contempt proceeding commenced under MCL 764.15b, the prosecuting attorney shall prosecute the proceeding unless the petitioner retains his or her own attorney for the criminal contempt proceeding.").

---

[5] Counsel recognized that he could call petitioner as a witness when he stated on the record that he would like to question petitioner, "whether I call him as a witness or I am cross-examining him." This statement supports the conclusion that cross-examining petitioner instead of moving for a directed verdict was, in no way, a sound trial strategy.

Under MCL 764.15b and the corresponding court rule, the trial court lacked legal authority to try LT for criminal contempt unless the action was prosecuted by a prosecuting attorney or an attorney retained by DEC. The absence of a proper prosecutor constituted a jurisdictional defect rendering LT's conviction void. See *People v Clement*, 254 Mich App 387, 394; 657 NW2d 172 (2002) ("When a court is without jurisdiction of the subject matter, its acts and proceedings are of no force and validity; they are a mere nullity and are void.") (quotation marks and citation omitted).

Run-of-the-mill procedural errors are not jurisdictional defects. See *In re Stone*, 295 Mich 207, 211-212, 294 NW 156 (1940). "[O]nly those challenges that question the very authority of the court to convict and sentence the defendant" constitute jurisdictional defects. *People v Carpentier*, 446 Mich 19, 46; 521 NW2d 195 (1994) (RILEY, J. concurring). In *Carpentier*, the Supreme Court held that a violation of the right to counsel constitutes a jurisdictional defect. *Id*. at 29-30. Other examples of jurisdictional defects include improper personal or subject matter jurisdiction, double jeopardy, imprisonment without authority to sentence the defendant to the institution in question, or when the defendant was convicted of no actual crime. *Id*. at 47-48 (RILEY, J., concurring).

Here, the trial court had no power to try LT for criminal contempt when neither the prosecuting attorney nor counsel for DEC appeared on the day set for trial. At that point, the trial court should have dismissed the case for want of jurisdiction. LT's conviction and sentence must be vacated on this ground. Another contempt hearing can occur only if a prosecutor undertakes the responsibility of prosecuting LT, or DEC retains counsel as set forth under MCL 764.15b and MCR 3.708.

## C. THE NEW SHOW-CAUSE HEARING REQUIRES A DIFFERENT JUDGE

If the prosecutor decides to undertake the prosecution, or if DEC decides to retain private counsel for the same purpose, the new show-cause hearing must be conducted before a different judge.

The following factors guide a reviewing court's determination of whether remand to a different judge is required:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citations omitted).]

See also *Sparks v Sparks*, 440 Mich 141, 163; 485 NW2d 893 (1992) (reassigning the case to a different judge on remand because the appearance of justice would be better served with a new judge presiding).

Judge Evans, the trial court judge who oversaw the proceedings to date, has already decided the credibility questions at the heart of this case. And given the "certainty and vigor with which the trial judge expressed [his] findings," *People v Pillar*, 233 Mich App 267, 271; 590 NW2d 622

-8-

(1998), it is reasonable to expect that he would have substantial difficulty in setting aside those feelings and findings on retrial.

In his role as prosecutor, Judge Evans elicited the evidence needed to convict LT. Had the trial court not pinned down LT's location during his questioning of DEC, the key evidence of trespassing—the single fact giving rise to a violation of the PPO—would not have emerged. This evidence ultimately formed the predicate for the trial court's guilty verdict, sparking the unmistakable impression that the trial court functioned as both an advocate and a fact-finder. See *People v Stevens*, 498 Mich 162, 170-171; 869 NW2d 233 (2015) ("A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.") (citations omitted). Preserving the appearance of justice supplies a second reason that Judge Evans should not try this case, if it is tried, a second time.

In his role as fact-finder, Judge Evans emphatically expressed belief that LT was guilty beyond a reasonable doubt:

> Well, very well. In this case, [defense counsel] has correctly stated that the burden is on the petitioner, or more precisely, since the Court in some sense is conducting the hearing as to the alleged contemptuous behavior, in order for the respondent to be found guilty of criminal contempt of court, it must be proven beyond a reasonable doubt that he did violate the [PPO] and that he did so intentionally, and the court does so find.

> \* \* \*

> The court notes that . . . as [defense counsel] pointed out, there is a discrepancy or a disagreement between the parties and the testimony today about whether [LT] entered onto [DEC]'s land. [DEC]'s original motion, affidavit and motion, was a little bit ambiguous in the sense that it did not specifically indicate that [LT] had entered onto his land. He did indicate in that affidavit, quote [LT] was standing behind my pickup. I went outside and asked [LT] what he was doing, unquote. One could interpret that as—that statement—to the effect that, well, he -- "he" being [DEC], did not specifically state that [LT] was standing behind my pickup truck on my land, although that's probably a reasonable inference one could draw. But in any event, the Court does not have to draw inferences because [DEC] specifically testified here today that [LT] had entered onto his land, and [LT] denies that, but the Court had the opportunity today to observe both [LT] and [DEC] as they testified, and was in a unique position regarding determining the believability and credibility of the witnesses. . . . [A]nd the Court does find that [DEC] was being truthful when he asserted that [LT] had entered onto his property and was standing behind his . . . pickup truck. And the Court finds that [LT] was not being truthful when he indicated he was just walking down the road minding his own business, walking his dog, when he was set upon by [DEC]'s dog. . . . The Court

-9-

finds that not to be truthful testimony, and the Court accordingly finds beyond a reasonable doubt that [LT] did violate the [PPO] . . . .

Judge Evans's findings regarding LT's untruthfulness eliminate any reasonable possibility that he could function as an unbiased and impartial decisionmaker on retrial. "[T]he situation is one in which experience teaches that the probability of actual bias on the part of a decisionmaker is too high to be constitutionally tolerable." *Hughes v Almena Twp*, 284 Mich App 50, 70; 771 NW2d 453 (2009) (quotation marks and citations omitted). Judge Evans's "participation as an accuser, investigator, fact-finder, or initial decision maker" solidifies this Court's conviction that a new judge is required if the case is retried. *Id*.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Sima G. Patel