*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DESHAUN LAMAR BOUNDS,

        Defendant-Appellant.

UNPUBLISHED
February 14, 2025
10:20 AM

No. 368108
Wayne Circuit Court
LC No. 21-008912-01-FC

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right, challenging his jury-trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and his sentence of 22 to 40 years' imprisonment. We affirm.

## I. FACTS

On June 18, 1999, between 8:00 and 9:00 p.m., the complainant and her cousin were driving to an event when they stopped at a bank's side-by-side automated teller machines (ATM). Both the complainant and her cousin got out of their car and were using the ATMs when defendant approached them brandishing a handgun, demanded money, and threatened to shoot them. It was dark and defendant's face was obscured. The complainant and her cousin gave defendant money and their jewelry. Defendant then got behind the complainant and used his left hand to feel from her left breast down to her stomach. He then ordered them back into their car and he joined them. The complainant was in the front passenger seat, her cousin was driving, and defendant was sitting in the rear directing the driver at gunpoint while threatening to kill them. They drove several blocks and into an alley. The complainant was forced to exit the car with defendant and to place her hands on the rear of the car. Defendant, who was behind her, put his hands inside of the complainant's dress, groped her breast and thigh, and inserted his finger into her vagina. Defendant then opened his pants, stuck his penis into her vagina while continuing to make threats, and eventually ejaculated. During his assault, defendant's gun fell to the ground so, when she was able, the complainant dropped to the ground in an attempt to grab it but defendant fell on top of her, hit her in the side of the face, and grabbed his gun. Defendant then ordered the complainant

to give him her driver's license and to get back into the car. He then told the complainant's cousin to drive away. Once home, the complainant contacted law enforcement, and samples were collected from her body during a physical examination. In 2014, as a result of the work of the Sexual Assault Kit Task Force, the samples in the complainant's kit were tested, and information stored in a database suggested a match to defendant's DNA. In 2020, the police obtained a swab from defendant that confirmed the test results and match. Defendant was charged with two counts of CSC-I, and was ultimately convicted on one count.

On appeal, defendant argues that the trial court erred by permitting the prosecution to remove a witness—the complainant's cousin—from the witness list, thus denying defendant his right to confront the witnesses against him. He also argues that the court erred by not providing a missing-witness instruction. Further, defendant argues that the court erred in its assessment of certain variables while scoring the sentencing guidelines. For the reasons discussed below, these claims are without merit.

## II. MISSING WITNESS

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant objected to the removal of the complainant's cousin from the witness list and did request a missing-witness jury instruction; thus, these arguments are preserved for appellate review. This Court reviews a trial court's decision to permit the prosecution to delete a witness from the witness list for an abuse of discretion. *People v Callon*, 256 Mich App 312, 325-326; 662 NW2d 501 (2003). Likewise, a trial court's denial of a request for a missing-witness instruction is reviewed for an abuse of discretion. *People v Snider*, 239 Mich App 393, 422; 608 NW2d 502 (2000). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). However, defendant did not argue in the trial court that the removal of the complainant's cousin from the witness list violated his right to confrontation; thus, this unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant, or "when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* at 763-764 (quotation marks, alteration, and citation omitted).

### B. WITNESS PRODUCTION

The prosecution must notify a defendant of all known res gestae[1] witnesses and of all witnesses who will be produced at trial. See MCL 767.40a. In this case, the complainant's cousin was an endorsed prosecution witness. The complainant testified that her cousin was with her when they were robbed at gunpoint, and that the assailant forced the cousin to drive them to a secluded location where the assailant sexually assaulted the complainant. The complainant's cousin,

---

[1] A res gestae witness is generally a person who has "witness[ed] some event in the continuum of the criminal transaction and [whose] testimony would . . . have aided in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001).

however, did not appear at trial. "Once a witness is endorsed under MCL 767.40a(3), the prosecution must use due diligence to produce the witness." *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014). The prosecution may add or delete witnesses from this list "at any time," provided that the defendant stipulates to the amendment, or "upon leave of the court and for good cause shown." MCL 767.40a(4). See also *People v Everett*, 318 Mich App 511, 518; 899 NW2d 94 (2017).

In this case, on the first day of testimony, the prosecuting attorney informed the trial court that a police officer had served a subpoena on the complainant's cousin; however, she had communicated by e-mail the evening before trial that she was unable to appear because of a "family emergency" and ongoing health issues of both herself and her daughter. The prosecuting attorney informed the trial court that she had spoken to the cousin for "a couple hours" the week before the trial, and described her as "extremely cooperative." The prosecuting attorney continued that she had a "lengthy conversation" with the cousin and her husband, after receiving the e-mail, to explore how the prosecution could make it possible for the cousin to testify, but did not reach agreement. The prosecuting attorney added that she was sending an investigator to speak with the cousin that morning. According to the prosecuting attorney, the cousin's e-mail stated as follows:

> To whom it may concern: Unfortunately, there has been an unexpected family emergency that has taken place. My daughter has been hospitalized again today (meaning yesterday) for another blood transfusion. She has lupus and has had her colon removed. This is causing me great anxiety on top of my own personal issues that I have.

> I am a two-time cancer survivor. With that being said, I am having some issues with my surgery site. I went for another ultrasound yesterday (meaning the day before yesterday), and awaiting to receive review from my doctors. With all of this happening this has added additional stress with my doctor - - additional stress which my doctor has advised me to avoid anything that would cause any more anxiety. Unfortunately, I won't be able to make a court appearance due to these circumstances.

On the next day of trial, the prosecuting attorney moved to remove the complainant's cousin from the witness list, asserting there was good cause. Defense counsel objected and indicated that she would be requesting a missing-witness jury instruction. The prosecuting attorney reiterated that she had "several contacts" with the complainant's cousin while preparing for trial, in which the cousin was "very cooperative," and detailed the efforts made during the previous day to secure the cousin's appearance, such as having "several people from our office reach out" to the cousin, who did not answer any phone calls. She continued that a detective went to the complainant's cousin's residence after the previous day's proceedings and was able to speak with her husband to remind him that there was a subpoena that required his wife to testify at the trial, and offered any necessary assistance to accommodate her including transportation. Subsequently, the husband contacted the detective to confirm that his wife would testify the following day; however, she failed to appear and neither she nor her husband could be reached by telephone.

The trial court declared that "due diligence was shown and the Court finds good cause to un-endorse [the cousin] at this time." The trial court made its decision on the basis of "the disclosures and the e-mail about medical concerns of this person's daughter as well as the follow-up diligence done by the OIC [officer-in-charge] in going to make numerous phone calls, done contacts, in person contacts, with her home and her husband."

Defendant argues that the trial court erred by finding that the prosecutor's efforts satisfied the due-diligence standard to produce the complainant's cousin. Defendant argues that the trial court should have issued a bench warrant for the cousin in order to compel her testimony because there was no evidence, other than defendant's DNA, to corroborate the complainant's version of events. But the prosecution need only have made a diligent good-faith effort to produce the complainant's cousin. As our Supreme Court explained in *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998): "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."

Here, the prosecution made at least a reasonable effort to produce the complainant's cousin. As detailed, she was the subject of a personally served subpoena two weeks before trial, and the prosecuting attorney personally spoke to the cousin several times, including at length the week before trial, and found her to be cooperative. When the complainant's cousin unexpectedly did not appear, in accordance with her physician's advice, and in the days after both she and her daughter required medical interventions related to serious illnesses, as detailed in the e-mail, the prosecuting attorney had another "lengthy conversation" with the cousin and her husband in an attempt to secure the witness. The next day, after her continued absence, a detective was dispatched to speak with the cousin and her husband, which apparently resulted in an agreement to appear. However, after another nonappearance, and several unsuccessful attempts to reach the complainant's cousin, she was un-endorsed.

Defendant emphasizes the possible importance of the complainant's cousin's testimony, as the only person who could contradict or confirm the testimonies of defendant and the complainant. However, it is apparent that the prosecuting attorney considered the cousin an important witness, having invested much in the way of time and resources in an attempt to secure her testimony, despite the cousin's medical limitations. Even though these efforts were ultimately unsuccessful, and fell short of physically compelling her attendance at trial, the trial court did not abuse its discretion by determining that the cousin's removal from the witness list was for good cause after diligent good-faith efforts were made to obtain her testimony. See *Bean*, 457 Mich at 684; *Callon*, 256 Mich App at 325-326.

## C. MISSING-WITNESS INSTRUCTION

Relatedly, defendant argues that the trial court abused its discretion by denying his request to issue a missing-witness instruction. After hearing arguments on the matter, the court declined to give the instruction, explaining that, "based on what the Court has heard through both the OIC as well as the indications and comments of the witness herself, I think the People did make reasonable efforts."

-4-

A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). The missing-witness instruction states as follows: " '*[State name of witness]* is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case.' " *Everett*, 318 Mich App at 527, quoting M Crim JI 5.12. When the prosecution fails to produce a witness whose nonappearance the trial court has not excused by determining that the prosecutor used due diligence to produce the witness, the trial court should issue the instruction. *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004); *People v Snider*, 239 Mich App 393, 422-423; 608 NW2d 502 (2000). The instruction permits the inference, when the prosecution fails to use due diligence to produce an endorsed witness, that the missing witness's testimony would have been unfavorable to the prosecution. *Everett*, 318 Mich App at 527.

In this case, as discussed, the trial court properly determined that the complainant's cousin's appearance was excused for good cause after the prosecution exerted due diligence to produce her. Because the trial court properly granted the prosecution's motion to remove the complainant's cousin from its witness list, defendant was not entitled to the missing-witness instruction and the trial court did not abuse its discretion in denying defendant's request. See *Snider*, 239 Mich App at 422.

## D. RIGHT TO CONFRONTATION

Defendant argues that the complainant's cousin's removal from the witness list violated his right to confrontation. We disagree. Both the United States and Michigan Constitutions guarantee an accused the right to confront adverse witnesses. US Const, Am VI; Const 1963, art 1 § 20. The right to confrontation is important because it enables the trier of fact to view the adverse witness's demeanor as a part of a credibility determination. *Bean*, 457 Mich at 682 (citation omitted). In this case, defendant's right to confrontation was not implicated by the cousin's absence. She was not a witness at the trial and she did not provide any statements of record accusing defendant of anything. The files of the 1999 investigation were not found. Although a detective spoke to her in 2021, the interview was not recorded and the cousin was not shown a photographic lineup. Defendant cites no authority stating that he had a right to confront a potential witness from whom no statements against him ever entered the record. Accordingly, defendant has not established plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## III. PRIOR RECORD VARIABLES

Defendant argues that the trial court erred in assessing Prior Record Variable (PRV) 3, PRV 4, and PRV 5, because it counted defendant's juvenile adjudications in connection with which defendant was not represented by counsel, and that his trial counsel provided ineffective assistance by failing to present prima facie proof showing the absence of counsel during defendant's juvenile adjudications.

## A. PRESERVATION AND STANDARD OF REVIEW

This Court reviews the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are

adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* Although defendant argued in the trial court that PRV 3, PRV 4, and PRV 5 should have been assessed at zero points because the PSIR indicated that defendant was not represented by counsel during three of his juvenile convictions, defendant did not raise an ineffective assistance of counsel claim. Unpreserved claims of ineffective assistance are reviewed for errors apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). The constitutional question whether an attorney provided ineffective assistance depriving a defendant of his right to counsel is reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

## B. PRIOR RECORD VARIABLES

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A sentencing court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all variables.[2] *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). A court relies on inaccurate information when it sentences a defendant by consulting an inaccurate guidelines range. *Francisco*, 474 Mich at 89 n 7.

Defendant argues that PRV 3, PRV 4, and PRV 5, regarding juvenile adjudications, should each have been assessed at zero points. PRV 3 is assessed at 50 points for three prior high-severity juvenile adjudications, 25 points for two such adjudications, and 10 points for one. MCL 777.53(1). PRV 4 is assessed at 10 points for three or four prior low-severity juvenile adjudications, 5 points for two, and two points for one. MCL 777.54(1). PRV 5 is assessed at 5 points when there were "2 prior misdemeanor convictions." MCL 777.55(1)(c). However, the latter includes only "an offense against a person or property, a controlled substance offense, or a weapon offense," MCL 777.55(2)(a), or "adjudications for operating or attempting to operate a vehicle . . . while under the influence of or impaired by alcohol." MCL 777.55(2)(b).

Here, the trial court assessed PRV 3 at 50 points, PRV 4 at 10 points, and PRV 5 at 5 points. Defendant had argued that his juvenile adjudications, specifically convictions 2, 3, 7, and 8, of the 10 listed in the juvenile-convictions section of the presentence investigation report (PSIR), should not have been counted for purposes of assessing those variables, because the PSIR indicated that defendant was not represented by an attorney for those adjudications. The trial court found that juvenile adjudications 3, 7, and 8[3] counted for purposes of PRVs 3, 4, and 5, explaining, "While it does show the attorney was waived—I mean, that could have been for any number of reasons. We don't know why if an attorney was waived and if so why."

---

[2] The trial court, the prosecution, and defense counsel agreed that the 1998 sentencing guidelines were applicable in this case and that issue is not challenged on appeal.

[3] The trial court did not count juvenile conviction 2 as a juvenile adjudication because the PSIR did not list an adjudication date, sentence, or sentence date.

When a prior adjudication "was procured in violation of defendant's right to counsel," it may not be counted while assessing a PRV. *People v Alexander*, 207 Mich App 227, 230; 523 NW2d 653 (1994). See also *People v Moore*, 391 Mich 426, 437-438; 216 NW2d 770 (1974), citing *Loper v Beto*, 405 US 473, 480; 92 S Ct 1014; 31 L Ed 2d 374 (1972). In *People v Carpentier*, 446 Mich 19, 31; 521 NW2d 195 (1994), our Supreme Court stated that a defendant must satisfy the "initial burden of establishing that the conviction was obtained without counsel or without a proper waiver of counsel" when asserting that a previous conviction occurred in violation of the right to counsel. The Court further stated that a defendant could meet this burden by presenting "prima facie proof that a previous conviction" was in violation of the right to counsel, "such as a docket entry showing the absence of counsel or a transcript evidencing the same," or "by presenting evidence that the defendant requested such records from the sentencing court" but that the court had not provided them in reasonable time. *Id.*, citing *Moore*, 391 Mich at 440-441. Should a defendant meet this initial burden, the burden then shifts to the prosecution to "establish the constitutional validity of the prior conviction." *Carpentier*, 446 Mich at 31, quoting *Moore*, 391 Mich at 441.

In this case, defendant has not met his burden to show that his juvenile adjudications, identified as 3, 7, and 8, occurred without counsel or a proper waiver thereof. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR[.]" *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The only record considered with regard to defendant's juvenile adjudications was the list of them presented in the PSIR, which listed his juvenile adjudications, indicating for each, under the "attorney present" line, that counsel was waived.[4] Defendant has presented no evidence that the reported waivers of counsel were improper. Defendant argues that a PSIR from a previous case involving defendant listed the same juvenile adjudications, but that it was unknown whether an attorney was present, and that there is no indication that the probation agent creating the instant PSIR determined that defendant properly waived counsel at the juvenile proceedings. However, this is not proof that the current PSIR is inaccurate, or that any of defendant's juvenile adjudications at issue here occurred in violation of his right to counsel. Because the notations in the PSIR that defendant had "waived" counsel during his juvenile adjudications are unchallenged by evidence specifically refuting such waivers, defendant has not met his initial burden of showing that any of those convictions were obtained without counsel or a proper waiver of counsel. See *Carpentier*, 446 Mich at 31.

## C. INEFFECTIVE ASSISTANCE

Alternatively, defendant argues that the performance of his trial attorney was deficient for failing "to present prima facie proof showing the absence of counsel during juvenile adjudication." A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to establish ineffective assistance, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the

_____

[4] A waiver is the "intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted).

defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). The defendant must also show that the resultant proceedings were "fundamentally unfair or unreliable." *Id.*

A defense attorney's performance was deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). In this case, as discussed, defense counsel objected to the assessments of prior record variables that relied on juvenile adjudications identified as 3, 7, and 8, on the ground that the PSIR indicated that defendant did not have counsel at those proceedings. However, there is no evidence that defense counsel could have provided anything more to suggest that the juvenile adjudications occurred in violation of defendant's right to counsel. As stated, the PSIR's indication that defendant waived counsel in these proceedings is undisputed, and nothing in the record suggests that any such waivers were improper. In fact, the PSIR is detailed with respect to defendant's juvenile adjudications identified as 3, 7, and 8 in that they were all adjudicated in the Wayne County Juvenile Court under Petition numbers 94005346, 95001802, and 96009552, respectively. This information could have been used, for example, by defendant's appellate counsel to obtain documents and to provide support for a motion to remand for an evidentiary hearing under MCR 7.211(C)(1)(a),[5] challenging defendant's trial counsel's effectiveness in this regard. Instead, on appeal, counsel makes a purely speculative claim that the subject juvenile adjudications occurred in violation of defendant's right to counsel. This argument is wholly insufficient and, therefore, defendant has not shown that his trial attorney could have challenged the PRV assessments beyond her unsuccessful objection. Accordingly, defendant has failed to establish that his trial counsel rendered ineffective assistance in this regard.

## IV. OFFENSE VARIABLES

Defendant argues that the trial court erred when assessing Offense Variable (OV) 10 and OV 12. A sentencing court must consult the advisory sentencing guidelines and assess the highest amount of possible points for each offense variable. *Lockridge*, 498 Mich at 392 n 28. The sentencing offense determines which offense variables are to be assessed, and the appropriate offense variables are generally assessed on the basis of the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017) (quotation marks and citation omitted). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Horton*, 345 Mich App 612, 616; 8 NW3d 622 (2023) (quotation marks and citation omitted).

---

[5] MCR 7.211(C)(1)(a) allows for motions to remand to the trial court when, for instance, an issue requires development of a factual record for proper appellate consideration of it. Such a motion "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing."

## A. OFFENSE VARIABLE 10

Defendant argues that the trial court erred in assessing OV 10, which covers exploitation of a victim's vulnerability, MCL 777.40(1), at 15 points. OV 10 is scored at 15 points where predatory conduct was involved. MCL 777.40(1)(a). "Predatory conduct" is defined as "pre-offense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a).

In *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008), our Supreme Court stated that OV 10 is properly scored at 15 points when the responses to the following inquiries are affirmative:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

Predatory conduct involves only conduct that is "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), quoting *Cannon*, 481 Mich at 162. Predatory conduct is conduct that "created or enhanced" a victim's vulnerability. *People v Barnes*, 332 Mich App 494, 503-504; 957 NW2d 62 (2020), quoting *Huston*, 489 Mich at 461.

In this case, the trial court justified its assessment of 15 points for OV 10 as follows: "I mean, predatory conduct was the conduct leading up to the sexual assault. There were two individuals at a bank. [Defendant] approached at gunpoint, forced them into a vehicle to drive to a different location to commit the crime."

Defendant argues that OV 10 should have been assessed at zero points because his crime was simply opportunistic, given that he happened upon the complainant and her companion at an ATM. We agree that the evidence did not suggest that defendant was lying in wait, or stalking, in order to accomplish his armed robbery of the complainant and her companion at the ATM. The complainant testified that she first noticed the assailant approaching while she and her companion were at the ATM machines, when he pointed a gun at her and demanded, and received, their property. That preoffense conduct appears merely opportunistic.

However, defendant's subsequent conduct was sufficiently predatory to support assessing 15 points for OV 10 for his conduct before he sexually assaulted the complainant. The complainant testified that the assailant groped her breast before ordering her and her companion at gunpoint into the companion's car, where he continued to direct the driving while threatening to kill them. Defendant forced the complainant's companion to drive into an alley, and forced the complainant

outside, behind the car, where he positioned her in such a manner as to be able to sexually assault her while continuing to threaten her with his gun.

This evidence established that defendant engaged in preoffense conduct directed toward a vulnerable victim in order to accomplish a sexual assault. The complainant was vulnerable because she had been the victim of a crime, was threatened at gunpoint, and was concerned not only for her own well-being, but also for that of her companion, a family member. Defendant then forced the victims into a secluded area where the complainant would be more vulnerable to defendant's aggressions, and committed CSC-I. Thus, predatory behavior occurred before defendant committed the crime, exploiting the complainant's vulnerability, and manipulating the conditions to enable his sexually assaultive behavior. See *Barnes*, 332 Mich App at 503-504.

## B. OFFENSE VARIABLE 12

Defendant argues that the trial court erred by assessing OV 12 at 25 points. OV 12 considers felonious criminal acts that were contemporaneous with the sentencing offense, and 25 points are assessed when "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). For this purpose, a felonious criminal act should be counted if it occurred within 24 hours of the sentencing offense and will not result in a separate conviction. MCL 777.42(2)(a). "[W]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010).

The trial court explained its assessment 25 points for OV 12 as follows:

So, I think just off the top of my head you have an armed robbery, a felonious assault and a kidnapping that were all not charged conduct and did not result in separate convictions. Those are all felonies and all crimes against a person so I think the standard has been met to show that OV-12 should be scored at twenty-five.

Defendant argues that the trial court errantly counted offenses that were a part of the sentencing offense, in violation of *Light*. We note that the trial court instructed the jury that, in order to convict defendant of CSC-I, it would have to find that defendant sexually assaulted the complainant while either committing armed robbery or possessing a weapon. Because use of a dangerous weapon is an element of felonious assault,[6] for purposes of OV 12, neither defendant's felonious assault, nor his armed robbery, of the complainant could be among the three or more felonious criminal acts involving crimes against a person contemporaneous with the sentencing offense. However, even excluding one of those felonious criminal acts, there was evidence that defendant committed five more felonious criminal acts within 24 hours of the CSC-I that did not involve a criminal conviction.

Again, the complainant testified that defendant also threatened her companion with a gun while taking their jewelry, forced them both into the companion's vehicle at gunpoint, and directed

---

[6] See *People v Jackson*, 487 Mich 783, 787 n 2; 790 NW2d 340 (2010).

the companion's driving at gunpoint. So, there were two instances of kidnapping, along with armed robbery and felonious assault committed against the companion, and another uncharged felonious criminal act that was not a part of the sentencing offense and that the jury did not rely on to find defendant guilty of CSC-I.[7] Thus, the trial court did not clearly err by assessing 25 points for OV 12.

Affirmed.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

---

[7] The jury relied upon either felonious assault of the complainant, or armed robbery of the complainant, to find defendant guilty of CSC-I, meaning that one of those two felonies was not relied upon by the jury.